[No. 1330. Decided June 19, 1894.]

THE STATE OF WASHINGTON, *on the Relation of John W. Stearns, Respondent,* v. ANDREW H. SMITH *et al., Appellants.*

BOARD OF REGENTS OF AGRICULTURAL COLLEGE — POWERS OF TREASURER OF DE FACTO BOARD.

Where a board of regents of a state institution stands by and allows a succeeding board to assume and discharge the duties of such office without question, the succeeding board, although it may have been illegally appointed, becomes the *de facto* board, and, being in full and exclusive possession of said office, it becomes the duty of the courts to aid such *de facto* board in obtaining possession of the public funds devoted to such institution.

Where the law provides for the election by a board of regents of one of their number as treasurer, the election of such officer by

a *de facto* board constitutes the officer a treasurer *de jure* of such board, and entitles him to the funds in the hands of the treasurer of the preceding board.

*Appeal from Superior Court, Pierce County.*

*John A. Shackleford,* for appellants.

*James A. Haight,* for respondent.

The opinion of the court was delivered by

SCOTT, J.— This is an action on the official bond of the defendant Andrew H. Smith, given as treasurer of the board of regents of the agricultural college. The bond runs to the state, as required by § 966, Gen. Stat. The breach assigned is the failure of Smith to turn over the funds of the college in his hands at the expiration of his term. John W. Stearns is alleged to be his successor in office. The cause was submitted on an agreed statement of facts, and judgment was rendered against Smith and his sureties, from which they have appealed.

The act providing for the agricultural college was passed late in the legislative session of 1891, and approved by the governor too late to enable him to submit to the state senate for confirmation or rejection the names of the trustees he intended to nominate, as the constitution requires. The five trustees of the college were named by him a few days later, and a commission was issued to each trustee designating the term he was appointed to hold. Said appointees qualified and entered upon the performance of the duties pertaining to the office. The college was organized, a corps of instructors was obtained, and its work as an educational institution was entered upon. Extensive building operations were carried on and others were projected, and large sums of money from both the state and national governments were received and disbursed.

At the beginning of the next legislative session in 1893

these appointments, with many others, were submitted to the state senate for confirmation or rejection. No final action was had until the 7th of March, two days before the adjournment of the legislature, when the somewhat unusual action was taken of rejecting all of such appointees, with perhaps one or two exceptions, in a body, although so far as known there was no personal objection to them, with perhaps a very few exceptions. It seems that the interval before adjournment was too short to admit of the selection and submission of so many new names to the senate.

Art. 13, § 1 of the constitution provides as follows:

' "Educational, reformatory and penal institutions, those for the benefit of blind, deaf, dumb or otherwise defective youth, for the insane or idiotic, and such other institutions as the public good may require, shall be fostered and supported by the state, subject to such regulations as may be provided by law. The regents, trustees or commissioners of all such institutions existing at the time of the adoption of this constitution, and of such as shall thereafter be established by law, shall be appointed by the governor, by and with the advice and consent of the senate; and upon all nominations made by the governor the question shall be taken by the ayes and noes, and entered upon the journal."

And § 966 of the General Statutes requires the board of regents to elect one of their own number as treasurer; consequently only members of the board are eligible to the office, or qualified to hold it.

At the time of the rejection of Smith he had $17,036.82 of the moneys of the state dedicated to the use of the agricultural college. This money he has retained and never paid over to the state, or to any officer or any person on account, or for the benefit, of the state or college.

March 31, 1893, the succeeding governor appointed a new board of regents of the agricultural college, who duly

qualified according to law, and have ever since performed the duties of the board of regents.   The appointments and commissions of the new board were in every substantial respect like those of the old board.   On the 4th day of May, 1893, Stearns, the relator in this case, was duly elected treasurer by the new board, and thereupon duly qualified according to law, and entered upon the performance of his duties as such, and has ever since said time actively performed the duties of treasurer of said board of regents.   On the 26th day of May, 1893, and before the commencement of this suit, said Stearns as such treasurer demanded of defendant Smith said sum of money.   Upon his refusal to comply therewith, application was made to this court for a writ of mandamus to compel him to turn over said funds, which was denied upon the ground that such treasurer was not a state officer within the meaning of the constitutional provision giving to this court jurisdiction to issue such writ.   *State, ex rel. Stearns, v. Smith,* 6 Wash. 496 (33 Pac. 974).

We find it unnecessary to determine some of the questions which have been raised upon this appeal.   For instance, it is contended by respondent that Smith ceased to be treasurer immediately upon his rejection by the senate, and that it then became his duty to turn over the funds in his hands to the state treasurer, he being authorized to receive and retain the same under subd. 1, § 105, Gen. Stat., which provides that it shall be the duty of the state treasurer "to receive and keep all moneys of the state not expressly required by law to be received and kept by some other person."   It is claimed that he was the only officer authorized to receive or retain the same pending the election of a successor to Smith, and the failure to pay the same over to him is alleged as one of the breaches of the bond.

If, however, the appointment of Smith as regent was to fill a *vacancy* (the office never having been previously

filled), and he was a state officer, he could continue to hold until the election of his successor, under the following provision of the constitution (art. 3, § 13), viz.:

"When, during a recess of·the legislature, a vacancy shall happen in any office, the appointment to which is vested in the legislature, or when at any time a vacancy shall have occurred in any other state office, for the filling of which vacancy no provision is made elsewhere in this constitution, the governor shall fill such vacancy by appointment, which shall expire when a successor shall have been elected and qualified."

Otherwise his term of office would have been terminated under § 964, Gen. Stat., relating to the board of regents, which makes no provision for a holding over as to the first appointees, but does as to all subsequent ones. If the terms ended, the governor had the unquestioned right to fill the vacancies.

It is contended, however, by appellant that said regents are state officers within the meaning of § 13 aforesaid, and would hold over until their successors were regularly nominated by the governor and confirmed by the senate, and consequently that the action of the governor in naming a new board, and the subsequent election of Stearns as treasurer by them, was without effect.

A question of considerable importance would be presented here, relating to the powers and duties of the legislature and of the executive, and it might indirectly involve a great many officers now engaged in transacting the business of the state in its various departments. This, and a due respect for the coördinate branches of the state government, would lead us to approach it with caution, and not to render a decision thereon, at least one which would be contrary to the construction adopted by the executive, unless the same is necessary to a determination of the case. A like condition with respect to such appointments will very likely not again arise in the history of the state, and

the present situation was no doubt largely occasioned by the more or less unsettled condition of affairs attending the recent change from a territorial to a state form of government, and the manner of making such appointments arose from the necessities of the case, or the necessity therefor was deemed to have arisen. The argument and authorities presented by appellant in support of his contention strike us with a great deal of force. But after a careful consideration of the case we do not think the course of the appellant has been such as would enable him to preserve his rights under his appointment as regent and election as treasurer, were we to determine such contention in his favor. His claim that he was lawfully so appointed and elected, and that he rightfully entered upon and assumed the duties of regent and treasurer must be conceded. But it is also conceded that the new board of regents, immediately upon being appointed and commissioned, duly organized, assumed and entered upon the discharge of their duties as regents of said college, and the former board, of which appellant Smith was a member, ceased to perform any duties in relation thereto, and the acts of the new board have been in no wise questioned by the former regents, nor by the state, and Stearns, upon his election by said board as treasurer, and qualification as such, immediately entered upon the duties of said office, and has continued and is now continuing therein without question or hindrance by appellant, or any one. It does not appear that appellant ever assumed to act as regent after his rejection by the senate, and his only action as treasurer thereafter has been to retain, and insist upon retaining, the funds then remaining in his hands. He, together with his associates on said former board, stood by and allowed the succeeding board and treasurer to assume and discharge the duties of such offices without question otherwise. By so doing they all, in effect, abandoned their offices as regents,

and appellant Smith his position as treasurer as well. No term is fixed or prescribed for the office of treasurer, and he had no right to hold it under the statute unless he was a regent. He could not abandon the former and retain the latter.

There cannot be an officer *de jure* and an officer *de facto* in possession of the same office at the same time, and, if the officer *de facto* is in possession, the officer *de jure* cannot be in also. Mechem, Pub. Officers, § 322.

The present board of regents became, and now are, the *de facto* regents of said college, in full and exclusive possession of such offices, and it is the duty of the courts to aid them in obtaining possession of the public funds devoted to the agricultural college, etc. *Com'rs Washington Co. v. School Com'rs Washington Co.*, 77 Md. 283 (26 Atl. 115.)

Being such board they had a right, and it was their duty under the law, to elect a treasurer from their own number, and it is well settled that the acts of officers *de facto* pertaining to the office of which they have possession are valid and binding where it is for the interest of the public to sustain them. Throop, Public Officers, § 649. And important public interests are involved in instances like this. Consequently their act in electing Stearns was a valid act, and he became, and is, the treasurer *de jure* of such board. Throop, Public Officers, § 657.

The judgment of the lower court is affirmed.

Dunbar, C. J., and Hoyt, Stiles and Anders, JJ., concur.