[No. 4344–II.   Division Two.   January 23, 1981.]

JOHN A. BIGGS, *Appellant*, v. THE DEPARTMENT OF
RETIREMENT SYSTEMS, ET AL, *Respondents*.

*Fred D. Gentry,* for appellant.

*Slade Gorton, Attorney General,* and *Clifford D. Foster, Assistant,* for respondents.

PETRICH, J.—John A. Biggs, former Director of the Department of Ecology, appeals the Superior Court's affirmance of the denial by the Public Employees Retirement System (PERS) of his request for enhanced retirement benefits pursuant to RCW 41.40.190(5). We affirm.

Biggs was a member of PERS from 1947 until his retirement in 1977. On July 1, 1970, while the legislature was not in session, the Governor appointed him Director of the Department of Ecology pursuant to RCW 43.21A.050. That statute provides that the Director of the Department of Ecology "shall be appointed by the governor with the consent of the senate." It also provides that

[i]f a vacancy occurs in the position of director while the senate is not in session, the governor shall make a temporary appointment until the next meeting of the senate at which time he shall present to that body his nomination for the position.

On January 20, 1971, the Governor submitted to the Senate the appointment of Biggs, subject to the Senate's confirmation.[1] On May 5, 1971, the Senate confirmed this appointment.[2]

Following his appointment, Biggs filed requests with the director of the retirement system, asking that his retirement benefits be computed under the provisions of RCW 41.40.190(5). That statute grants members of PERS a retirement allowance of 3 percent, rather than the usual 2 percent, of the average final compensation for each year of service, where the "member was elected or appointed pursuant to Articles II or III of the Constitution of the state of Washington or RCW 48.02.010 . . ." Biggs concedes the inapplicability of both article 2 and RCW 48.02.010. However, he contends that he was appointed pursuant to article 3, specifically section 13 which provides:

VACANCY IN APPOINTIVE OFFICE. When, during a recess of the legislature, a vacancy shall happen in any office, the appointment to which is vested in the legislature, or when at any time a vacancy shall have occurred in any other state office, for the filling of which vacancy no provision is made elsewhere in this Constitution, the governor shall fill such vacancy by appointment, which shall expire when a successor shall have been elected and qualified.

Biggs argues that his appointment was one which was "vested in the legislature" since it was subject to the consent of the Senate.

In our view, the dispositive question on review is whether the Governor's appointment of the Director of the Department of Ecology "with the consent of the senate" pursuant

---

[1]Senate Journal, 42d Legislature (1971), at 97.

[2]Senate Journal, 42d Legislature (1971), at 1071, 1465.

to RCW 43.21A.050 constituted an appointment "vested in the legislature" within the contemplation of article 3, section 13.

Since neither the case law of our state,[3] nor the minutes of the constitutional convention[4] are of assistance in resolving the question at bench, we look to similar provisions in other state constitutions for guidance. *See* 2A C. Sands, *Statutes and Statutory Construction* § 52.04 (4th ed. 1973). Article 5, section 18 of the Indiana State Constitution[5] closely resembles article 3, section 13 of our state constitution.

In construing that provision the Indiana Supreme Court in *Tucker v. State,* 218 Ind. 614, 655, 35 N.E.2d 270, 285 (1941) stated that

> [s]ection 18 of Article 5 does not deal with offices, the appointment to which lies within the scope of the executive power under the general grant. The first provision deals with vacancy in an office, the appointment to which vests in the General Assembly. This would include officers, the appointment of whom we shall hereafter see was expressly vested in the Legislature.[6] The next deals

---

[3]The only Washington cases even remotely involving article 3, section 13 are *State ex rel. Lemon v. Langlie,* 45 Wn.2d 82, 113, 273 P.2d 464 (1954); *State ex rel. DeBow v. McNeill,* 127 Wash. 157, 160, 219 P. 852 (1923); *State ex rel. Gilbert v. Dimmick,* 89 Wash. 182, 184, 154 P. 163 (1916); *State ex rel. Fish v. Howell,* 59 Wash. 492, 494, 110 P. 386 (1910); *State ex rel. Stearns v. Smith,* 9 Wash. 195, 199, 37 P. 294 (1894).

[4]*See* Journal of the Washington State Constitutional Convention 1889 (1962).

[5]"Vacancies filled by governor.—When, during a recess of the General Assembly, a vacancy shall happen in any office, the appointment to which is vested in the General Assembly; or when, at any time, a vacancy shall have occurred in any other State office, or in the office of Judge of any court; the Governor shall fill such vacancy, by appointment, which shall expire, when a successor shall have been elected and qualified."

[6]In Indiana, appointments expressly vested in the legislature include those few offices that were appointive by the legislature at the time the constitution was adopted, *Tucker v. State,* 218 Ind. 614, 679, 35 N.E.2d 270, 294 (1941), and those offices necessary to enable the legislature to discharge its duties as an independent legislative body. *State ex rel. Jameson v. Denny,* 118 Ind. 382, 386, 21 N.E. 252,

with other state offices. The state officers specifically provided for in the Constitution are elected by the people, and it may be assumed that it was contemplated that other offices elective by the people would be created. In the absence of an express provision, the general executive power does not carry with it the power to fill a vacancy in an elective office. . . . The concluding clause, that the appointment shall expire when a successor shall have been elected and qualified, clearly indicates that the provision was designed to cover interim appointments to offices which were not filled by executive appointment, for if there is a vacancy in an office appointive by the Governor, there need be no interim between the vacancy and the selection of a successor, since the Governor may fill the office at once. His appointment to fill the office would fill it, and there would be no vacancy nor serving until a successor had been elected and qualified.

We agree and adopt the *Tucker* court's reading of the counterpart of article 3, section 13. Consistently with that interpretation, we hold that article 3, section 13 applies to *interim appointments* to positions not filled by executive appointment. The interim terminates when the successor is selected by the legislature, the electorate or other appropriate body. *See also State ex rel. Smith v. Tazwell*, 166 Ore. 349, 357, 111 P.2d 1021, 1024 (1941) (involving a nearly identical provision, Ore. Const. art. 5, § 16). That provision has no applicability to an appointment made by specific statutory authority or within the Governor's general grant of executive power, such as the appointment of the Director of the Department of Ecology.

The parties are in dispute regarding whether article 3, section 13 applies only to elective offices, or whether it applies to both appointive and elective offices. Since analysis of that issue is not necessary to resolution of the crucial question at bench, we need not address it here.

Confirmation of an appointment to a public office is to be distinguished from the appointment itself, for in confirming

---

254 (1889). Even assuming such offices exist in our state, it is obvious that the Director of the Department of Ecology falls into neither category.

the appointment, the Senate does not in any sense choose the appointee. *See State Police Bd. v. Moore,* 244 Ind. 388, 393, 193 N.E.2d 131, 133 (1963) (state police board's power to approve appointments made by superintendent did not give board right of appointment); *People ex rel. MacMahon v. Davis,* 284 Ill. 439, 446, 120 N.E. 326, 329 (1918) (approval of appointee by municipal council not an appointment); 63 Am. Jur. 2d *Public Officers and Employees* § 110 (1972). *See also Myers v. United States,* 272 U.S. 52, 122, 71 L. Ed. 160, 168, 47 S. Ct. 21 (1926) (where the court quotes with approval Oliver Ellsworth's remark that "The advice of the Senate does not make the appointment. The President appoints."); *Tucker v. State, supra.*

To say that confirmation by one branch of the legislature, the Senate, is equivalent to an appointment vested in the legislature would be an impermissible distortion of the plain meaning of the constitution. Ordinarily, the word "appoint," merely means to name or designate some person to hold an office. In the exercise of its "advice and consent" the Senate has only the negative power to reject such appointment. *See State ex rel. Brothers v. Zellar,* 7 Ohio St. 2d 109, 113, 218 N.E.2d 729, 732 (1966).

We believe that the appointments vested in the legislature referred at least to the selection of United States Senators. At the time the Washington State Constitution was adopted and up until the adoption of the seventeenth amendment to the United States Constitution in 1913, United States Senators were selected by legislative bodies of the respective states. The entire selective process was vested wholly within the legislative body. In the event the legislature was inoperative due to a recess, any vacancy which might occur could, by virtue of article 3, section 13, be filled by gubernatorial appointment until the legislature might thereafter convene and elect a successor.

Finally, acceptance of Biggs' contention that he was appointed pursuant to article 3, section 13 would lead to inconsistent results. Following this argument to its logical conclusion, Biggs would be entitled to enhanced retirement

benefits by virtue of the fortuitous circumstance of his appointment while the legislature was not in session. On the other hand, he would receive only normal retirement benefits had he been appointed while the legislature was in session.

Since Biggs was clearly appointed pursuant to RCW 43.21A.050 rather than article 3, section 13 of the state constitution, the decision of the Superior Court is affirmed.

REED, C.J., and PETRIE, J., concur.

Reconsideration denied February 27, 1981.

Review denied by Supreme Court May 8, 1981.