STEPHENS *v.* CAMPBELL.

Opinion delivered February 24, 1900.

DE FACTO OFFICER—RIGHT TO FEES.—One who has acted as night watchman *de facto* of a city, but without legal title to the office, is not entitled to recover fees for services performed as such watchman. (Page 491.)

Appeal from Jackson Circuit Court.

RICHARD H. POWELL, Judge.

*J. W. Phillips* and *S. D. Campbell*, for appellant.

The appointment of appellee as night watchman could not be made by the vote of less than a majority of the whole council. Sand. & H. Dig., § 5158. The resolution having failed to pass, there was no such office as night watchman, and appellee could not be even a *de facto* officer. 68 Am. St. Rep. 95; 118 U. S. 425. Even a *de facto* officer cannot recover fees or salary, unless he be also an officer *de jure*. 28 Am. St. Rep. 163; 32 Am. St. Rep. 228. Appellee entered upon the discharge of his duties before passage of the ordinance providing that he should have the fees sued for in this case. Hence he is not entitled to have them. The emoluments of the office could not be increased during his term, so as to inure to his benefit. Sand. & H. Dig., § 5167; 50 Ark. 81; 53 Ark. 205. The city had no power to compensate a watchman by fees. 45 Ark. 454; 31 Ark. 462.

*Gustave Jones*, for appellee.

An attack on appellee's title to the office could not be made except by the state. Sand. & H. Dig., §§ 7367, 7368. Title to an office cannot be attacked collaterally. 29 Pa. St. 129; 49 Ark. 439.

BATTLE, J. On the 28th of October, 1897, W. W. Campbell sued T. S. Stephens, before a justice of the peace of Jackson county, on the following account:

"T. S. Stephens, Dr.

"To W. W. Campbell.

"To money had and received..........$30.75."

A jury was impaneled to try the issues in the case, and the plaintiff then stated that he was the night watchman or policeman of the city of Newport, and had performed services for which the fees sued for were due; that the defendant was marshal of the city, and had collected the fees; and that he was entitled to the same. The defendant thereupon made his statement to the jury, and admitted that he was marshal, but denied all the other statements made by the plaintiff.

S. R. Phillips, a witness in behalf of the plaintiff, testified

as follows: "Am recorder of city of Newport, and have here record of council meetings. Minutes of council meeting of January 4, 1897, read as follows, viz.:

"Council Room, January 4, 1897.

"Council met in regular session, with the following members present: Mayor Foster, Ald. Thompson, Goldman and Bach. Absent: Ald. Johnson. Quorum present. Minutes of preceding meeting were read and approved.

"Resolved by the city council that the mayor appoint a night watchman, to be confirmed by the council, at a salary of fifty dollars per month, and that said night watchman be required to give bond in the sum of one thousand dollars for the faithful performance of his duties, and to account for all moneys and valuables that may come to his hands as such officer. [Signed]        Ike Goldman, Alderman."

"Motion by Ald. Thompson, second by Ald. Goldman, that the above resolution be adopted as read. The roll was called: Ald. Thompson, 'Yes.' Ald. Goldman, 'Yes,' and Bach did not vote."

"His Honor, Mayor Foster, appointed W. W. Campbell as night watchman.

"Motion by Ald. Thompson, second by Ald. Goldman, that the appointment by the mayor of W. W. Campbell to the office of night watchman be confirmed. On roll call, Ald. Thompson, 'Yes;' Goldman, 'Yes;' Ald. Bach did not vote.

"R. C. HARDER, Recorder.

"J. P. FOSTER, Mayor."

"Minutes of council meeting of February 15, 1897, read as follows, viz:

"Council Room February 15, 1897.

"Council met in regular session, with the following members present: Mayor Foster, Ald. Johnson, Ald. Bach and Ald. Thompson; Recorder Harder absent.

"Ordinance to establish the office of night policeman or night watchman introduced, placed on first reading; rules were suspended; placed on second reading by caption; on motion it was placed on third and final reading. Motion by Ald. Johnson, seconded by Ald. Bach, that the ordinance be

adopted. Ald. Johnson voted 'Yes;' Ald. Bach, 'Yes;' Ald. Thompson, 'Yes.' (Signed)

　　　　　　　"J. P. FOSTER, Mayor.

　　　　　　　"W. R. THOMPSON, Recorder Pro. Tem."

"The record does not show any appointment of Ald. Thompson as recorder pro tem, in absence of Harder."

"I have ordinance record, containing ordinance No. 89, creating office of night watchman or policeman, and fixing compensation, and it reads as follows:

　　　　　　　" 'ORDINANCE No. 89.

" 'An ordinance to establish the office of city watch or police, and to prescribe the duties and compensation of the incumbent.

" 'Be it ordained by the city council of the city of Newport.

" 'Section 1. That the office of city watch or police is hereby created and established for the city of Newport, the incumbent of which shall hold office during the term of the city council electing him, and until his successor is elected and qualified; provided that such office may be vacated, or the incumbent removed therefrom, at any time by a majority vote of the city council, upon three days' notice in writing, served upon him previous to the time of taking such vote.

" 'Sec. 2. That the night watchman or policeman shall be elected every two years, and at the first regular meeting of a new city council, or as soon thereafter as practicable. Any member of the council is authorized to nominate a candidate for such office, and the candidate receiving a majority vote of the council shall be declared elected.

" 'Sec. 3. The watchman or policeman so elected shall receive as compensation for his services fifty dollars per month, and in addition thereto shall receive the same fees allowed by law to constables for similar services; provided the same are taxed in the costs and collected from the defendant.

" 'Sec. 4. The watchman or policeman shall within ten days from his election enter into bond to said city of Newport with good and sufficient securities to be approved by the city council in the sum of one thousand dollars, conditioned that he will obey all orders of the mayor, or, in his absence, the

mayor *pro tem.*; that he will execute all process to him directed or delivered, and pay over monthly all moneys or city scrip or other valuables received by him by virtue of his office to the city council or the parties entitled thereto, and in [every] respect discharge the duties of watchman or policeman according to law and the ordinances of said city.

" 'Sec. 5. If said city watchman or policeman shall fail to enter into said bond within the time herein prescribed, then such office shall be declared vacant, unless further time be given him by the city council to make the bond.

" 'Sec. 6. The city watchman or policeman shall be a conservator of the peace throughout the city of Newport. He shall execute all process, orders or notices to him directed by the mayor, council, or city attorney, delivered to him for that purpose. It shall be his further duty to suppress all riots, affrays, fighting, and unlawful assemblies, and shall keep the peace and cause all offenders to be arrested and taken before the mayor or some magistrate to be dealt with according to the ordinances of the city of Newport, or the laws of the state, and shall well and truly present to the proper officers all offenders against the ordinances of said city and the laws of the state, which shall come within his knowledge. He shall, when necessary for his protection or assistance in getting around through the streets, alleys and drives of the city, and in all places where he may think any person or persons are violating any ordinance of the city, or the laws of the state, carry a lantern, and shall also carry a billy or club, and shall, when on duty, and in search of offenders of any ordinance of the city or laws of the state, or guarding prisoners, together with the persons summoned by him to aid him in the discharge of such duty, be permitted to carry a pistol, as provided by section 1498 of Sandels & Hill's Digest, and at all times when on duty he shall wear some sufficient sign or badge. He shall have [authority] at all times, when necessary to preserve the peace of the city, or to secure the citizens thereof from personal violence, and their property from fire and unlawful depredations, to summons any bystander or citizen of the city, or as many thereof as may be deemed necessary, to assist him in making arrests, suppressing riots,

affrays, and unlawful assemblies, and taking the offenders before the mayor, or some magistrate, to be dealt with according to law, or to jail to await his or their trial; and any person failing to obey such summons or order shall, upon conviction before the mayor, be fined in any sum not exceeding ten dollars.

" 'Sec. 7. That the city watchman or policeman shall at all times be under the general superintendence of the mayor. He shall go on duty at 6 p. m., and remain until 6 a. m., unless otherwise ordered by the mayor.

" 'Sec. 8. That this ordinance be in force and take effect from and after its publication.' "

Evidence was adduced tending to prove that the plaintiff rendered services in various cases as night watchman or policeman, and that the defendant collected the fees allowed for such services.

The court instructed the jury, over the objections of the defendant, as follows:

"No. 1. This is an action by plaintiff, Walter Campbell, against T. S. Stephens, for certain fees, which he alleges the said Stephens collected, which were due him as night watchman for services rendered by him as such night watchman and police officer.

"No. 2. The city ordinance creates the office of night watchman, and fixes his fees for his services at such amount as are allowed constables for similar service.

"No. 3. [Section 3328, Sand. & H. Digest of statutes of Arkansas.]

"No. 4. Now, if you find, from a preponderance of evidence in the case, that the defendant collected fees due plaintiff for services as night watchman and police officer, your verdict may be for the plaintiff in such sum as you may find the defendant has collected since his appointment under his appointment, after the publication of the ordinance creating the office of night watchman or police officer."

At the request of the defendant the court gave the following instruction: "The jury are instructed that if you find

for the plaintiff, you will say in what cases you find he is entitled to recover, and specify the items in each."

The jury returned the following verdict: "We, the jury, find for the plaintiff.

City of Newport *v.* Jno. Holloway,

　　1 arrest, .75 . . . . . . . . . . . . . . . . . . . . . . . . . . . $　　75

City of Newport *v.* Mattie Kennedy,

　　1 arrest, .75; summoning 3 witnesses, .75;

　　attending court, .50 . . . . . . . . . . . . . . . . . . . .　2　00

City of Newport *v.* James O'Brian,

　　1 arrest, .75; attending court, .25; serving

　　commitment . . . . . . . . . . . . . . . . . . . . . . . . .　1　75

City of Newport *v.* J. N. S. White,

　　1 arrest, .75; attending court, .25; com. to

　　jail, .75 . . . . . . . . . . . . . . . . . . . . . . . . . . .　1　75

City of Newport *v.* Chas. Curtin,

　　1 arrest, .75; attending court, .25; com. to

　　jail, .75 . . . . . . . . . . . . . . . . . . . . . . . . . . .　1　75

City of Newport *v.* Foster Bates,

　　1 arrest, .75; attending court, .50; com. to

　　jail, .75 . . . . . . . . . . . . . . . . . . . . . . . . . . .　2　00

City of Newport *v.* Lizzie Wilkins,

　　1 arrest, .75 . . . . . . . . . . . . . . . . . . . . . . . .　　75

City of Newport *v.* William Johnson,

　　1 arrest, .75; attending court, .25; com. to

　　jail, .75 . . . . . . . . . . . . . . . . . . . . . . . . . . .　2　00

City of Newport *v.* Maggie Taylor,

　　1 arrest, .75 . . . . . . . . . . . . . . . . . . . . . . . . ,　　75

City of Newport *v.* Walter Jones,

　　1 arrest, .75 . . . . . . . . . . . . . . . . . . . . . . . .　　75

　　　　　　　　　Total . . . . . . . . . . . . . . . . . . . . .$14　00

　　　　　　　　　　　　　　"M. S. LITTLETON, Foreman."

The fees specified in the verdict of the jury were for services rendered by the plaintiff as night watchman or policeman. Judgment was rendered in accordance with the verdict, and the defendant appealed.

The statutes of this state provide that cities of the first and second class "shall have power to establish a city watch or

police; to organize the same under the general superintendence of the mayor; prescribe its duties and define its powers in such manner as will most effectually preserve the peace of the city, secure the citizens thereof from personal violence, and their p·operty from fire and unlawful depredations." Sand. & H. Di.g, § 5204. They also provide: "All appointments of officers by any council shall be made *viva voce*, and the concurrence of a like majority [that is, a majority of the whole number of members elected to the council] shall be required; the names of those voting, and for whom they voted, on the votes resulting in the appointment, shall be recorded, and all such voting shall be public." *Id.* § 5158.

In this case the appellee, Campbell, introduced the minutes of the proceedings of the city council of Newport, which were had on the 4th day of January, 1897, to show that he was appointed or elected night watchman of the city of Newport. At that time no such office was in existence. On the 15th day of February, 1897, the city council of the city of Newport passed an ordinance, and thereby ordained that the office of the city watch or police be created for the city of Newport, and that the incumbent thereof shall hold the same during the term of the city council electing him, and until his successor is elected and qualified. Appellee does not claim or pretend that he was appointed or elected night watchman by the city council since the passage of the ordinance creating that office, but contends that he was at least a *de facto* officer, and that his title to the office cannot be inquired into in a collateral proceeding. He was, obviously, not elected,—first, because the city council of Newp rt had not created the office of night watchman at the time he was nominated for that position by the mayor, and was voted for by members of the city council, and, in the second place, if there had been such an office, he was not legally elected, a majority of t·ie members of the council not having concurred in his election.

Assuming that he was a night watchman *de facto*, is he entitled to recover the fees allowed for the services rend red by him in that capacity? It is true that the acts of a *de facto* officer are valid as respects the rights of third persons.

But the rule is different when he seeks to recover a salary or fees which rest upon the title to the office. As said in *Andrews* v. *Portland,* 79 Me. 490: "A *de facto* officer has no legal right to the emoluments of the office, the duties of which he performs under color of an appointment, but without legal title. He cannot maintain an action for the salary. His action puts in issue his legal title to the office, and he cannot recover by showing merely that he was an officer *de facto.*" In *Nichols* v. *McLean,* 101 N. Y. 526, the court says: "It is abundantly settled by authority that an officer *de facto* can, as a general rule, assert no right of property, and that his acts are void as to himself, unless he is also an officer *de jure.*" In Cro. Eliz. 699, the doctrine is tersely stated as follows: "The act of an officer *de facto,* when it is for his own benefit, is void, because he shall not take advantage of his own want of title, which he must be cognizant of; but where it is for the benefit of strangers, or the public, who are presumed to be ignorant of such defect of title, it is good.' *Pooler* v. *Reed,* 73 Maine, 129; *State* v. *Carroll,* 38 Conn. 449; *McVeany* v. *Mayor,* 80 N. Y. 192; *Dolan* v. *Mayor,* 68 N. Y. 274; *Nichols* v. *McLean,* 101 N. Y. 526; *McCue* v. *County of Wapello,* 56 Iowa, 698; *People* v. *Potter,* 63 Col. 127; *State* v. *Carr,* 28 Am. St. 163; *Waterman* v. *Ry. Co.,* 32 Am. St. 228; *Riddle* v. *County of Bedford,* 7 Serg. & Rawle, 386; *Mayfield* v. *Moore,* 53 Ill. 428; S. C. 5 Am. Rep. 52; Mechem's Public Offices and Officers, § 342.

In *Miller* v. *Callaway,* 32 Ark. 666, the rule stated was followed, the court holding that "the acts of an officer *de facto* only are, when they concern the public or third persons having an interest in the act done, valid, and cannot be collaterally called in question; yet it is also well settled that a mere color of title to the office does not avail as a protection to him in an action against him for trespass to persons or property, and that his acts, so far as he is himself concerned, are invalid."

Under the statutes of this state, an officer *de facto,* without legal title to the office, is a usurper (*Lambert* v. *Gallagher,* 28 Ark. 451; *Wheat* v. *Smith,* 50 Ark. 267, 273), and can be removed from office by "an action by proceedings at law * * instituted against him, either by the state or the party entitled

to the office." Where he "has received fees and emoluments arising from the office," he is liable therefor to the person entitled thereto, who may claim the same in the action brought to deprive him of the office, * * or in a separate action. If no one be entitled to the office, * * the same may be recovered by the state, and paid into the state treasury." Sandels & Hill's Digest, § 7371. The fees are not his, and he is not entitled to hold them. If he collects any fees for services rendered, he holds them at sufferance.

It follows from what we have said that appellee is not entitled to recover the fees allowed for services rendered by him as a night watchman or policeman, he having no legal title to that office.

The judgment of the circuit court is therefore reversed, and final judgment upon the merits will be entered here in favor of the defendant.

WOOD, J., absent.