## Davis *v.* Wilson.

Opinion delivered February 23, 1931.

*Sam A. Davis,* for appellant.

*Hal L. Norwood,* Attorney General, and *Robert F. Smith,* Assistant, for appellee.

*R. W. Robins, Amicus Curiae,* for appellee.

HART, C. J., (after stating the facts). It is well settled that courts of equity will not interfere, by injunction, to determine questions concerning the appointment or election of public officers, or their title to office; and it does not matter whether the incumbent is an officer *de jure* or *de facto.* 22 R. C. L. 113, p. 454.

This rule is in accord with the repeated holding of our own court. In *Rhodes* v. *Driver,* 69 Ark. 606, 65 S. W. 106, 86 Am. St. Rep. 116, the court quoted with approval from High on Injunctions, the following: "No principle of the law of injunctions, and perhaps no doctrine of equity jurisprudence, is more definitely fixed or more clearly established than that courts of equity will not interfere by injunction to determine questions concerning the appointment or election of public officers or their title to office, such questions being of a purely legal

nature, and cognizable only by courts of law. A court of equity will not permit itself to be made the forum of determining the disputed questions of title to public offices, or for the trial of contested elections, but will in all such cases leave the claimant of the office to pursue the statutory remedy, if there be such, or the common law remedy, by proceedings in the nature of a *quo warranto*." High, Injunctions (3d Ed.), No. 1312.

This doctrine has been reaffirmed in the following cases: *Hester* v. *Bourland,* 80 Ark. 145, 95 S. W. 992; *Lucas* v. *Futrall,* 84 Ark. 540, 106 S. W. 667; *Gladish* v. *Lovewell,* 95 Ark. 618, 130 S. W. 579; *Harrison* v. *Norton,* 104 Ark. 16, 148 S. W. 497; *Walls* v. *Brundidge,* 109 Ark. 250, 160 S. W. 230, Ann. Cas. 1915C, 980; and *Allen* v. *Sellers,* 141 Ark. 206, 217 S. W. 257.

The Supreme Court of the United States is committed to the doctrine that a court of equity has no jurisdiction over the appointment and removal of public officers. In *White* v. *Berry,* 171 U. S. 366, 18 S. Ct. 917, it was held that a court of equity has no jurisdiction over the appointment and removal of public officers, whether the power of removal is vested, as well as that of appointment, in executive or administrative boards or officers, or is intrusted to a judicial tribunal. It was further held that the jurisdiction to determine the title to a public office belongs exclusively to the courts of law, and is exercised by certiorari, error or appeal, or by mandamus, prohibition, *quo warranto,* or information in the nature of a writ of *quo warranto,* according to the circumstances of the case, and the mode of procedure established by common law or by statute.

In the case of *Walton* v. *House of Representatives,* 265 U. S. 487, 44 S. Ct. 628, it was held that a court of the United States, sitting as a court of equity, is without jurisdiction of a suit to enjoin the prosecution of a proceeding to remove a State official from office.

In the application of these settled principles of law, the court is of the opinion that the chancery court has no

jurisdiction to restrain the Lieutenant Governor from recognizing R. E. Spence as a State senator or recording his vote as prayed in the complaint.

It is claimed, however, that the court has jurisdiction to restrain the Lieutenant Governor from issuing vouchers to R. E. Spence as State senator and J. Oscar Humphrey from issuing warrants upon said vouchers. This contention proceeds upon the theory that R. E. Spence was a *de facto* officer and, as such, was not entitled to the salary allowed to State senators.

Reliance is placed upon article 4, §§ 5 and 12, of our Constitution. Section 6 provides that the Governor shall issue writs of election to fill such vacancies as shall occur in either house of the General Assembly. Section 11 provides that each house shall be the sole judge of the qualifications, returns and elections of its own members.

On the one hand, it is sought to uphold the decree of the chancery court on the theory that constitutional provisions of this kind are found in the organic laws of several of the States, making each branch of the Legislature the judge of the election and qualifications of its members. It is claimed that such a provision is a grant of power and constitutes each the exclusive tribunal as to the qualifications of its own members. On the other hand, it is insisted that this provision should be construed only to mean that the acts of Senator Spence in the present case, in voting upon measures and acting generally as a State senator, could not be called in question in a collateral proceeding, but that he was only a *de facto* officer, and as such was not entitled to the emoluments which belong by law to his office; therefore it is insisted that the chancery court had the power to enjoin the issuance of a voucher of his pay as State senator to him.

In the first place, it will be seen that a decision of this question would, as to all practical purposes, settle whether Spence was an officer *de jure* or *de facto;* and, as we have already seen, a court of equity will not per-

mit itself to be made the forum for the purpose of determining disputed questions as to the title of public offices.

It is suggested that article 16, § 13, gives the chancery court jurisdiction. That section provides that any citizen of any county, city or town may institute suit in behalf of himself and all others interested to protect the inhabitants thereof against the enforcement of any illegal exaction whatever. Reference to the cases cited under the section in the Constitution will show that the section has reference to taxes levied without any warrant of law. The section is but a recognition of the well-known principles of equity, as expounded in *Walls* v. *Brundidge,* 109 Ark. 250, 160 S. W. 230, Ann. Cas. 1915C, 980, and in many other cases decided by this court, the jurisdiction of a court of equity is expressly limited to the protection of civil and property rights. Civil rights have no relation to the establishment or management of the government. They consist in the power of acquiring and enjoying property and exercising the paternal and marital powers and the like. This distinction was also pointed out in *Harrison* v. *Norton,* 104 Ark. 16, 148 S. W. 497. There the court said that courts of equity have no power to try election contests, but that they do have the jurisdiction in a suit to restrain the enforcement of an alleged illegal exaction, which was in that case a road tax, alleged to be illegal and unauthorized.

Again, it is said that courts of equity have inherent jurisdiction to restrain the officers of a municipality or other governmental corporation from making an unauthorized appropriation of the corporate funds, as decided in numerous cases by this court, including *Town of Jacksonport* v. *Watson,* 33 Ark. 704; and *Russell* v. *Tate,* 52 Ark. 541, 13 S. W. 130, 7 L. R. A. 180, 20 Am. St. Rep. 193. The reason is that the corporation holds the money for the inhabitants to be expended for legitimate corporate purposes, and a misappropriation of these funds is an injury for which no other remedy is so effectual and appropriate as an injunction. It presents a multi-

plicity of suits and a misappropriation of the funds for a purpose which in itself is illegal. In *Russell* v. *Tate,* 52 Ark. 541, 13 S. W. 130, this doctrine was reaffirmed, and it was held that the officers in whose hands moneys are intrusted for a municipality are trustees in the management and application of such funds; and that the application of these funds to a purpose other than that provided by law is a breach of such trust, which may be enjoined in equity. See also *Sanderson* v. *Texarkana,* 103 Ark. 529, 146 S. W. 105. This was the proper application of the well-known power of equity to protect the citizens in their property rights, and it was properly held that a city clerk could be prevented by a suit in equity from appropriating the funds of the city to the building of a courthouse, which was a purpose not authorized by law.

In the present case, it cannot in any sense be said that the appropriation of the money by the issuance of the voucher was for an illegal purpose, the purpose being to pay a State senator which was authorized by law. The only question is that Spence was not the proper person to receive the salary or compensation. The purpose itself was lawful, and the question whether Spence was the proper person to receive the compensation depended upon the construction of the clause of the Constitution above referred to. As we have already seen, it is the settled law of this State that courts of equity have no jurisdiction in matters of an executive or political nature. To assume jurisdiction in controlling the exercise of political powers would be to invade the dominion of other departments of government, and to encroach upon the jurisdiction of the courts of common law. *Arnold* v. *Henry,* 155 Mo. 48, 55 S. W. 1089, 78 Am. St. Rep. 556.

Again the equitable maxim is invoked, that courts of equity will always assume jurisdiction where there is no adequate remedy at law. If it be conceded that, in the construction of the sections of the Constitution above re-

ferred to, Spence is not an officer *de jure* but is only an officer *de facto,* still the plaintiff would have an adequate remedy at law. In *Cox* v. *State,* 72 Ark. 94, 78 S. W. 756, it was held that the Governor had no inherent power by virtue of his office or of article 6, § 23, and of the amendment to the Constitution, providing for filling vacancies in office until the next general election (which provisions plainly refer only to elective offices), to appoint the State Capitol Commissioners, a board created for a special purpose, the members of which are not elective, and whose terms will expire with the completion of the work. In that case the Attorney General brought suit against Cox and others who were appointed by the Governor to serve as members of the Board of State Capitol Commissioners. The circuit court found the law to be in favor of the contention of the Attorney General and gave judgment of ouster against the defendants. Upon appeal, the judgment of the circuit court was affirmed, thereby recognizing the jurisdiction of the circuit court in cases of this sort. This in accord with the general rule on the subject in the cases above cited.

If the Attorney General should refuse to bring suit upon the relation of a citizen and taxpayer, such person could bring suit in his own name under the authority of *Griffin* v. *Rhoton,* 85 Ark. 89, 107 S. W. 380; *Gladish* v. *Lovewell,* 95 Ark. 618, 130 S. W. 579; and *Green* v. *Jones,* 164 Ark. 118, 261 S. W. 43.

In this connection, we also call attention to the case of *Stephens* v. *Campbell,* 67 Ark. 484, 55 S. W. 856, where it is said: "Under the statutes of this State, an officer *de facto,* without legal title to the office, is a usurper (*Lambert* v. *Gallagher,* 28 Ark. 451; *Wheat* v. *Smith,* 50 Ark. 267-273, 7 S. W. 161), and can be removed from office by 'an action by proceedings at law instituted against him, either by the State or the party entitled to the office.' Where he 'has received fees and emoluments arising from the office,' he is liable therefor to the person entitled thereto, who may claim the same in the action

brought to deprive him of the office, * * * or in a separate action. If no one be entitled to the office, * * * the same may be recovered by the State, and paid into the State Treasury. Sandels & Hill's Digest, § 7371. The fees are not his, and he is not entitled to hold them. If he collects any fees for services rendered, he holds them at sufferance.''

We do not think that the case of *State of Montana* v. *Hart,* 56 Mont. 571, 185 Pac. 769, 7 A. L. R. 1678, has any application. There the relator instituted mandamus proceedings against the State Treasurer to enforce payment of a warrant as a member of the House of Representatives.

So, if it should be held here that Spence was merely an officer *de facto,* he could not maintain an action for the salary, because, as pointed out in *Stephens* v. *Campbell,* 67 Ark. 484, 55 S. W. 856, such action would put in issue his legal title to the office. The reason is that the act of an officer *de facto,* when it is for his own benefit, is void, because he shall not take advantage of his own want of title, which he must be cognizant of, but where it is for the benefit of strangers, or the public, it is good. This not being a suit by Spence for the salary of his office, we do not think that the principles of law decided in the Montana case have any application whatever.

The majority of the court is of the opinion that injunction is not the proper remedy, and equity is not the proper forum for determining the legality of the acts of the Lieutenant Governor and the Auditor of the State in issuing his salary, nor the legality of the appointment of Spence to the office of State Senator. The complaint, considered in all its aspects, must be held to be a suit for the purpose of trying the right of Spence to hold the office of State Senator; and, under the established rule in this State, a court of equity does not have jurisdiction for the reasons above set forth and for the additional reason that the plaintiff had a plain and adequate remedy at law, as above stated. In short, according to our own

decisions, the plaintiff had a plain and adequate remedy at law to try in one suit in the circuit court not only the title to the office but the right of Spence to the salary thereof. Therefore the decree of the chancery court will be affirmed.

SMITH and MEHAFFY, JJ., dissent.

SMITH, J., (dissenting). Whatever this case may be, it is not a contest for an office, nor does any one claim that R. E. Spence is an usurper, holding an office to which another is entitled. No other person asserts any right to exercise the functions of the office which Senator Spence is now filling. We need not, therefore, consider what remedy such a person should pursue, if there were such a person.

The allegations of the pleadings are that Senator Spence has been recognized as a member of the Senate by that body and is serving as a member thereof. He is, at least, a *de facto* member of that body, and, so long as the Senate recognizes his right to serve as such, it cannot be directly questioned except by and in the Senate. The citizen and taxpayer who has brought this suit does not question Senator Spence's right to act as a *de facto* officer; his insistence is that he is not entitled to be compensated for that service.

The few and the simple facts of this case should be kept in mind in determining the question which the taxpayer does raise, and that is, whether Senator Spence, although a *de facto* senator, has the legal right to draw compensation from the State Treasury for his service as a senator. The facts are undisputed and are all matter of public record.

The first senatorial district is entitled to a senator; and it had one. That senator resigned while the Senate was in session, and the Governor has appointed a successor, and this successor is now serving. Has this successor the legal right to receive compensation for that service?

It is unimportant that the Auditor of State has not refused to issue a voucher upon the State Treasury to compensate that service. The legal and constitutional question is no more affected by the willingness of the Auditor to issue this voucher than it would be by his refusal to do so. The question is not, what has the Auditor done, or is willing to do? The question is, what is the duty and what is the power of the Auditor under the Constitution and laws of this State? And the decision of that question should not be confused by any consideration of the fact that no other person claims the right to discharge the duties of Senator from the First Senatorial District of the State. The question raised by the citizen and taxpayer, as we have said, is the right of Senator Spence to have the Auditor draw in his favor a warrant upon the State Treasury to compensate him for that service. Certainly the complaisance or the obduracy of the incumbent filling the office of Auditor of State cannot be decisive of a question of such constitutional importance. His successor might be of another opinion, and constitutional rights cannot be made dependent upon the policy of the Auditor of State. I assume this officer wants only to know what his duty is under the Constitution and laws of the State, and no reflection upon him is intended. But what I do insist is that the willingness or unwillingness of the Auditor to issue the warrant is of no importance and cannot affect the decision of the question which the citizen and taxpayer has raised.

When the merit of the case is reached, the question appears to me to be a very simple one, and that is, did the Governor of the State have the authority to make the appointment? Section 6 of article 5 of the Constitution answers this question. It reads as follows: "The Governor shall issue writs of election to fill such vacancies as shall occur in either house of the General Assembly," and it is not insisted in any of the briefs filed in this case that this direction is not mandatory. On the contrary, the universal rule of construction is that such

provisions of the Constitution are to be construed as mandatory. As no one questions this rule of construction, I shall not argue it further nor cite cases to support it.

It is, however, suggested in the brief by *amicus curiae* that § 23 of article 6 provides that "When any office from any cause may become vacant, and no mode is provided by the Constitution and laws for filling such vacancy, the Governor shall have the power to fill the same by granting a commission, which shall expire when the person elected to fill said office at the next general election shall be duly qualified." Now, it may be conceded that an enabling act is necessary to make § 6 of article 5, above quoted, effective, and that, in the absence of an enabling act, § 23 of article 6 would confer upon the Governor the power to make the appointment, if, in fact there were a vacancy, and no mode had been provided by the Constitution to fill it. But such is not the state of the law. Full and adequate provision has been made for filling the vacancy as the Constitution contemplated should be done. By § 4962, Crawford & Moses' Digest it is provided that: "When any member elected to either house of the General Assembly shall resign in the recess thereof, he shall address and transmit his resignation, in writing, to the Governor; and when any such member shall resign during any session, he shall address his resignation to the presiding officer of the house of which he is a member, which resignation shall be entered upon the journal; in which case, and in all cases of vacancies happening or being declared during any session of the General Assembly, by death, expulsion or otherwise, the presiding officer of the house in which such vacancy shall happen shall immediately notify the Governor thereof, who shall immediately issue a writ of election to fill such vacancy." Section 4963, Crawford & Moses' Digest provides that when the Governor shall receive any resignation or notice of vacancy, he shall, without delay, issue a writ of election to fill such

vacancy. Sections 4964 and 4965 Crawford & Moses' Digest provide how the special election shall be held which the Governor is required to call.

The duty of the Governor is therefore mandatory, and full provision is made whereby that duty may be discharged. It appears therefore that the Governor is without power to make the appointment, and therefore Senator Spence is not a *de jure* senator. Consequently, the Auditor is without authority to issue the voucher.

In the recent case of *Hill* v. *Rector,* 161 Ark. 574, 256 S. W. 848, Hill brought suit against the city of Rector to recover a sum alleged to be due him for his services as mayor of that city. He alleged that the legally elected mayor had resigned, and that the city council, at its first regular meeting, had elected him as mayor to serve for the unexpired term. On behalf of the city it was denied that Hill had been elected in the manner provided by § 7518, Crawford & Moses' Digest, and that he was not, therefore, the legal mayor of the city, although he had served in that capacity. We there said: "It follows that the appellant failed to prove that he was duly elected mayor of the city of Rector. The appellant, however, does prove that he was the *de facto* mayor of the city of Rector. But in the case of *Stevens* v. *Campbell,* 67 Ark. 484, 55 S. W. 856, quoting from *Andrews* v. *Porter,* 79 Me. 490, we held: 'A *de facto* officer has no legal right to the emoluments of the office, the duties of which he performs under color of an appointment, but without legal title. He cannot maintain an action for the salary. His action puts in issue his legal title to the office, and he cannot recover by showing merely that he was an officer *de facto.*' The fact that the appellee (the city) in its answer recognized that the appellant 'was permitted to act as mayor' does not estop the appellee from setting up that appellant was not the duly elected mayor of the city. The appellee expressly denied that appellant was such mayor. We conclude therefore that

the court did not err in directing the jury to return a verdict in favor of the appellee.''

The reasons which induced us to hold that Hill was not entitled to recover compensation for his services as mayor of the city of Rector, although he had served in that capacity, are applicable here, and should result in the holding that Senator Spence is not entitled to compensation for his services as senator, although he has served in that capacity.

We have many times held that any citizen and taxpayer may, in his own name, institute suit in the chancery court to prevent any public official from paying out public revenue contrary to law, the most recent of these being the case of *Rose* v. *Brickhouse,* 182 Ark. 1105, 34 S. W. (2d) 472, in which the opinion was delivered January 19, 1931, and a number of cases to the same effect were there cited. That was a case in which Rose, as a citizen and taxpayer, was permitted to enjoin Brickhouse from drawing compensation for services in an official capacity which was unauthorized by law.

I am therefore of the opinion that, although Senator Spence is a *de facto* senator, and may act as such so long as he is permitted to do so by the Senate, yet his right to draw compensation for that service is one which any citizen and taxpayer has the right to raise, and, as Senator Spence is serving without authority of law, he is not entitled to be compensated for that service, and the Auditor should be enjoined from issuing him a voucher paying him therefor.

I am authorized by Mr. Justice MEHAFFY to say that he concurs in the views here expressed.