WINTHROP ROCKEFELLER, ET AL V. ERNEST HOGUE, ET AL

5-4869                                                        439 S.W. 2d 805

Opinion Delivered April 21, 1969

*Wright, Lindsey* & *Jennings* for appellants.

*Sam Robinson* (for appellee Hogue) and *Howell, Price* & *Worsham* (for appellee Hailey).

CONLEY BYRD, Justice.    Appellant Winthrop Rockefeller is the Governor of the State of Arkansas. Acting as such Governor and for the purpose of removing appellees Ernest Hogue and Newt L. Hailey, members of the Arkansas Game and Fish Commission, he appointed appellants Courtney Crouch and Heartsill Ragon as members of a "hearing panel" to prepare, in accordance with judicial standards, a proper record of the charges against each Commissioner.    The hearing panel is directed to hear the evidence presented both for and against removal of the Commissioners and, after the evidence had been properly prepared, to present it to the Governor for his decision.    Pursuant to the Governor's plan for the preparation of the record, H. W. McMillan was appointed "evidence officer" to investigate the charges against the Commissioners and to present such evidence as he considers pertinent to the hearing panel.

The Chancery Court enjoined appellants Crouch and Ragon from holding a hearing on the Governor's charges against the Commissioners upon the basis that the referral to the panel was an unlawful delegation of authority, and also enjoined the Governor from considering as admitted matters contained in a request for admissions (the request being submitted in accordance with

the discovery procedure provided for circuit, chancery and probate courts by Act 335 of 1953). For reversal appellants contend, among other things, that the chancery court erred in taking jurisdiction because the Commissioners have an adequate remedy at law. Appellants' argument is as follows:

"In the case at bar, two basic questions arise: (1) Is there a remedy available at law? (2) Is such remedy adequate to give appellees complete and prompt redress for any grievances they conceive they have because of the actions of appellants?

"The answer to the first of these questions is unquestionably in the affirmative. Section 5 of Amendment 35 grants to the Governor the power of removing appellees after a hearing and also provides that such hearing 'may be reviewed by the Chancery Court for the first district with right of appeal therefrom to the Supreme Court, such review and appeal to be without presumption in favor of any finding by the Governor or the trial court.' Thus the people of Arkansas have given to appellees a clear remedy as a matter of right to redress any alleged wrongs which they might receive at the hands of the Governor because of removal proceedings. There are no provisos or special qualifications into which appellees must fit their alleged grievances in order to obtain this right of appeal. Therefore, if appellees feel that they have been wronged or that their rights have been denied or infringed, they have a right to appeal to the Pulaski Chancery Court and to this Court.

"The answer to the question whether the remedy available to appellees is complete is also in the affirmative. In order to preclude the maintenance of a suit in equity the remedy at law must be plain, adequate, complete, and as efficient as the remedy

in equity. *First State Bank* v. *Chicago R. I. & P. R. R. Co.*, 63 F. 2d 585, *McGehee* v. *Midsouth Gas Company*, 235 Ark. 50, 357 S.W. 2d 282. Certainly the remedy provided for appellees by the people of Arkansas in this case meets all of these standards. By appealing the decision of the Governor to the courts in question, appellees can raise not only the alleged wrongdoings which they have raised in this suit but also any which might occur in the future as the removal proceedings continue. Also, by using the method provided for in the Constitution the appellees can have the matter decided once and for all without resorting to piecemeal litigation.

"In this case there would be no irreparable injury if appellees lose this appeal. Just for the sake of discussion, let us assume that the injunction is dissolved by this Court and that the Governor wrongfully removes appellees from office. The only thing which they stand to lose is privilege to serve as Commissioners on the Game & Fish Commission. No question of salary or other renumeration is here involved. Under the law it would not be necessary for the appellees to even miss a single day in office if they had been wrongfully removed. In *Rockefeller* v. *Hogue*, 244 Ark. 1029, 429 S.W. 2d 85, (1968), this Court held that the removal would not be complete and the office would not be vacant until the appellate proceedings had been completed.

"The people of Arkansas have provided appellees with a complete, adequate and efficient remedy to redress not only the alleged wrongs set forth in their complaints but also any grievances which they may conceive in the future. Since there are no special circumstances requiring the extraordinary remedy of injunction, the lower Court erred in allowing the appellees to substitute their request for an injunction for the appeal provided for in the Constitution."

Since our decisions, *Cummins* v. *Bentley*, 5 Ark. 9 (1842), *Bassett* v. *Mutual Benefit Health & Accident Ass'n.*, 178 Ark. 906, 12 S.W. 2d 893 (1929), recognize that equity has no jurisdiction where there is a complete and adequate remedy at law, we must then determine whether the Commissioners have a complete and adequate remedy at law.

The Commissioners sought to be removed were appointed under Amendment 35 to the Constitution of Arkansas. The amendment was initiated by the people and enacted at the general election. In adopting Amendment 35, the people of Arkansas made provision for an independent commission to regulate hunting and fishing in the State and to advance conservation of all forms of wildlife. This was something new in our constitutional fabric. By their action the people created the commission, set its membership, prescribed the qualifications for appointment, and generally outlined the powers of the commission. Section 2 of Amendment 35 conferred upon the Governor the power to appoint the commissioners. Because of the State's history of two term Governors, a "built in" safeguard was established, staggering the commissioners' terms of office, in the effort to prevent any Governor from gaining control of the commission. Thus, with seven year staggered terms, it was doubtlessly assumed that no Governor would be able to appoint a majority of the commissioners. Although recent history has shown that this assumption was erroneous in that one Governor served twelve consecutive years, there can be no doubt of the intentions. Section 5 of the Amendment provides:

"A Commissioner may be removed by the Governor only for the same causes as apply to other constitutional officers, after a hearing which may be reviewed by the Chancery Court for the First District with right of appeal therefrom to the Supreme Court, such *review and appeal to be without presumption in favor of any finding by the Governor or the trial court.*" [Emphasis ours].

In *Rockefeller* v. *Hogue,* 244 Ark. 1029, 429 S.W. 2d 85 (1968), we held that the removal phrase "for the same causes as apply to other constitutional officers," referred to the "high crimes and misdemeanors and gross misconduct in office," set out in Art. 15, § 1 of the Constitution as grounds for impeachment of officers in general.

The United States Supreme Court, In The Matter of John Ruffalo, Jr., 390 U.S. 544, 20 L. Ed. 2d 117, 88 S. Ct. 1222 (1968), pointed out that proceedings such as this are adversary proceedings of a quasi-criminal nature and that one so charged is accordingly entitled to "procedural due process". We understand this "procedural due process" to mean that one so charged is entitled to a hearing before a tribunal established by law and governed by rules of law previously established, 16 Am. Jur. 2d, *Constitutional Law* § 580, where he will be entitled to the compulsory attendance of witnesses or a substitute therefor such as the taking of depositions. Anything less would discourage men of character from accepting such positions, for otherwise their leadership and character could be destroyed by an adjudication that they were guilty of "high crimes and misdemeanors and gross misconduct in office" because of a mere failure of proof.

That a person charged in an impeachment proceeding is entitled to procedural due process is not a new requirement nor one of recent origin. It received much thought at the time of the impeachment of Sir Francis Bacon. When we analyze Section 5 above, to determine the point or place where the procedural due process is guaranteed a commissioner in a removal proceeding, we also find the answer to the question here involved—*i.e.* does the commissioner have a complete and adequate remedy at law to correct any alleged errors committed by the Governor in discharging his duties?

Under the scheme of government set out in our constitution of 1874, the government of the State was divided into three branches, the executive, the legislative and the judicial. Under Article 7, § 1, the judicial power was vested:

"... in one Supreme Court, in circuit courts, in county and probate courts and in justices of the peace. The General Assembly may also vest such jurisdiction as may be deemed necessary in municipal corporation courts, courts of common pleas, where established, and, when deemed expedient, may establish separate courts of chancery."

Article 7, § 4 gave the Supreme Court appellate jurisdiction only, unless otherwise specifically provided. Circuit courts were generally given jurisdiction in all civil and criminal cases and superintending control and appellate jurisdiction over inferior courts, Art. 7, § 11 and Art. 7, § 14. The chancery court, as distinguished from the circuit court, has at all times been a trial court or a court of first instance. Even the superintending control and appellate jurisdiction of the circuit courts over inferior courts from 1873 to date has been by way of trial anew on the merits without any regard to any error, defect or other imperfection in the proceedings of the inferior courts (Ark. Stat. Ann. § 26-1308 [Repl. 1962]).

Also, when Amendment 35 was adopted, there was no established procedure for a hearing before the Governor or for the compulsory production of evidence to be submitted to him. Nor did Amendment 35 give the right of subpoena to the Governor for the compulsory production of evidence.

We note further that while Section 5, *supra*, provides for a review "by the Chancery Court for the First District" it also refers to the same tribunal as "trial court" when providing that the review and appeal to

this court is to be "without presumption in favor of any *finding by* the Governor or *the trial court."* (Emphasis ours).

Thus we find that at the time of adoption of Amendment 35 there were no procedural rules established for holding hearings before the Governor or for compulsory attendance of witnesses. Nor was any such procedure established by Amendment 35. However, at that time, there existed a procedure established by law for a hearing before the chancery court, for compulsory attendance of witnesses and preservation of the record. The only conclusion that we can draw, from the language of the amendment equating the finding of the Governor with that of the "trial court" when viewed in the light of the history of the State at the time of the enactment and the requirements of procedural due process, is that a commissioner removed by the Governor is entitled to a trial anew on the merits in the Chancery Court of the First District without regard to any error, defect or other imperfection in the proceedings before the Governor. Because of this we agree with appellants that the commissioners have a complete and adequate remedy by appeal and that the chancery court was without jurisdiction to interfere with the hearing before the Governor.

Reversed and dismissed.

HARRIS, C.J. and FOGLEMAN, J., concur.

CARLETON HARRIS, Chief Justice. I agree that the Chancellor's decree should be reversed, but I see no necessity to go further than to say that the Pulaski Chancery Court had no jurisdiction to enjoin appellants from conducting the hearing. In 43 C.J.S., Injunctions, § 116, p. 647, it is stated:

"While injunctions have been granted to prevent the improper removal of an officer where

there was no doubt as to the illegality of the action and where the removal had not already taken place but was threatened, the general rule, in the absence of statute providing otherwise, is that equity has no jurisdiction to enjoin the appointment or removal of public officers, whether the power of appointment or removal is vested in executive or administrative boards * * *."

This is also pointed out in our own case of *Davis* v. *Wilson*, 183 Ark. 271, 35 S.W. 2d 1020.

In the Vermont case of *Emerson* v. *Hughes*, 90 A. 2nd 910, the factual situation was somewhat similar to the case at bar. The governor sought to remove a member of the Liquor Control Board. The Chancery Court granted a temporary injunction restraining the Governor from holding a removal hearing, but on appeal to the Supreme Court, that court held that the Court of Chancery had no jurisdiction to grant the injunction, stating that equity does not, as a general rule, have jurisdiction to enjoin the removal of a public officer.

Of course, under Amendment 35 to the Constitution of Arkansas (setting up the Game and Fish Commission), the Governor's findings may be appealed to the Chancery Court, and thus, at that time (if such an appeal should be perfected), the Chancery Court, by virtue of the constitutional provision, would have jurisdiction—but that jurisdiction is only granted in event of an appeal.

The majority are also of the view that the Chancery Court had no jurisdiction to issue the injunction, but my disagreement with the majority is based on the fact that they proceed to set out the procedure to be followed on appeal, if and when the Governor holds that a commissioner should be removed. The question of whether a commissioner who has been removed by the Governor is entitled to a trial anew on the merits in the Chancery

Court is not a question presented to this court in the instant litigation, and it is not argued by either side in the briefs submitted. Consequently, the majority is in the position of setting out the procedure to be followed on an appeal, without giving the parties, both appellants and appellees, the opportunity to brief this question.

In accordance with the views herein expressed, I too would reverse the Chancery Court, holding that it had no jurisdiction to enter the injunction, but I would terminate the opinion with that finding, leaving questions that have not yet arisen to be decided, if and when they do arise.

JOHN A. FOGLEMAN, Justice. I agree fully that the chancery court had no jurisdiction. I agree with the disposition because I think the case must be dismissed for want of jurisdiction. But I do not agree with the means employed to reach the result. There is a much more obvious want of jurisdiction in the trial court which has been urged by appellants but ignored by the majority. Because this want of jurisdiction of subject matter is total, any action taken in the case by either the trial court or this court, except to dismiss it, is wholly void.

Appellees sought to have the chief executive of the state and commissioners appointed by him enjoined from proceeding with a hearing under Amendment No. 35 to our constitution for the removal of appellees as members of the Arkansas Game and Fish Commission. Each complaint showed on its face that the chancery court was without jurisdiction.

This want of jurisdiction was recognized in the early case of *Rhodes* v. *Driver,* 69 Ark. 606, 65 S.W. 106, where this court quoted from *High* on *Injunctions*:

"No principle of the law of injunctions, and perhaps no doctrine of equity jurisprudence, is

more definitely fixed or more clearly established than that courts of equity will not interfere by injunction to determine questions concerning the appointment or election of public officers or their title to office, such questions being of a purely legal nature, and cognizable only by courts of law. A court of equity will not permit itself to be made the forum of determining the disputed questions of title to public offices, or for the trial of contested elections, but will in all such cases leave the claimant of the office to pursue the statutory remedy, if there be such, or the common law remedy, by proceedings in the nature of a *quo warranto."* High, Injunctions (3rd Ed.) No. 1312.

See also *Walls* v. *Brundidge,* 109 Ark. 250, 160 S.W. 230, Ann. Cas. 1915C 980; *Miller* v. *Tatum,* 170 Ark. 152, 279 S.W. 1002; *Sheffield* v. *Heslep,* 206 Ark. 605, 177 S.W. 2d 412.

Courts of equity have no authority or jurisdiction to interpose for the protection of rights which are merely political and where no civil or property right is involved. They have no jurisdiction in matters of a political nature or to interfere with the duties of any other department of government. *Walls* v. *Brundidge,* supra. To assume such jurisdiction would be to invade the domain of other departments of government or of tribunals having jurisdiction. 42 Am. Jur. 2d 834, Injunctions § 86.

Political rights have been clearly defined and distinguished in *Walls* v. *Brundidge,* supra, as follows:

"* * * Political rights consist in the power to participate directly and indirectly in the establishment or management of the government. These political rights are fixed by the Constitution. Every citizen has the right to vote for public officers and of being elected. These are political rights which

the humblest citizen possesses. Civil rights are those which have no relation to the establishment, support, or management of the government. They consist in the power of acquiring and enjoying property and exercising the paternal and marital powers and the like.''

Proceedings pertaining to removal from public office are matters of a political nature and the right of the incumbent to remain in office is a political right. In this state the chancery court has no jurisdiction in cases pertaining to ouster of an incumbent from public office and none can be conferred by statute. *Gladish* v. *Lovewell*, 95 Ark. 618, 130 S.W. 579. This court said in that opinion: ''The reason for the rule is that such cases involve political rights with which equity has nothing to do.''

This rule has general acceptance and is stated in 42 Am. Jur. 2d, Injunctions, § 86, page 835:

''A court of equity, unless its jurisdiction has been enlarged by statute, has no general jurisdiction over the removal of public officers, and therefore it cannot enjoin an officer or board from removing an officer or from appointing a successor to him after removal.''

See also 43 Am. Jur. 55, Public Officers, § 219.

It has been applied by the Supreme Court of the United States many times. *Walton* v. *House of Representatives*, 265 U.S. 487, 44 S. Ct. 628, 68 L. Ed. 1115 (1924) (and cases cited therein). In the *Walton* case, the court said that the rule was not altered even though the removal proceeding be in the nature of a criminal prosecution.

It has also been applied in a petition to enjoin a governor from conducting a removal hearing under a sta-

tute strikingly similar to the constitutional provision involved here. See *Emerson* v. *Hughes*, 117 Vt. 270, 90 A. 2d 910 34 A.L.R. 2d 539 (1952). The authorities were carefully reviewed in that case and overwhelming support for the rule was found. The statute 47 V.S. § 6131 read:

> "* * * 'Removal. After notice and hearing the governor may remove a member of the liquor control board for incompetency, failure to discharge his duties, malfeasance, immorality or other cause inimical to the general good of the state. In case of such removal, he shall appoint a person to fill the unexpired term.'"

The lack of jurisdiction is just as great even though an injunction is sought. *Walls* v. *Brundidge*, supra; *Miller* v. *Tatum*, 170 Ark. 152, 279 S.W. 1002; *Davis* v. *Wilson*, 183 Ark. 271, 35 S.W. 2d 1020; *Priest* v. *Mack*, 194 Ark. 788, 109 S.W. 2d 665; *Curry* v. *Dawson*, 238 Ark. 310, 379 S.W. 2d 287. Thus the chancery court was devoid of judicial power in this matter to the extent that any decree rendered by it would be void. *Raney* v. *Hinkle*, 80 Ark. 617, 95 S.W. 993; *Miller* v. *Tatum*, supra; *Robinson* v. *Morgan*, 228 Ark. 1091, 312 S.W. 2d 329. See also 4 C.J.S. 163, Appeal and Error, § 42.

I regret that the majority have seen fit to bypass this fundamental want of jurisdiction and have laid its action upon a jurisdictional limitation which is not so fundamental that the chancery court would be deprived of power to act. The existence of an adequate remedy at law is not ground for dismissing a complaint, even when objection to jurisdiction on that ground is raised by demurrer. *Higginbotham* v. *Harper*, 206 Ark. 210, 174 S.W. 2d 668. My regret is based not only upon my feeling that this court should be zealous in preventing and avoiding interference with other independent and coequal branches of government but upon the feeling that the court is using this vehicle to gratuitously render an advisory opinion upon procedures in this case. In so

doing, the court is not only rendering an opinion on questions not raised or briefed by the parties but is doing so by way of dictum as support for a judgment which itself is void for want of jurisdiction.

Since there was a want of jurisdiction of the subject matter or a want of power in the trial court, the jurisdiction of this court, being derivative, is no greater. Jurisdiction of an appellate court is derived from and depends upon that of the court of origin. *Rucker* v. *Cox*, 200 Ark. 247, 138 S.W. 2d 778; *Markham* v. *Evans*, 239 Ark. 1154, 397 S.W. 2d 365; *Whitesides* v. *Kershaw*, 44 Ark. 377; *Wright* v. *Wooldridge*, 94 Ark. 276, 126 S.W. 841. Where the court from which an appeal is taken has no jurisdiction, the appeal confers none. *Gregory* v. *Williams*, 24 Ark. 177; *Dunnington* v. *Bailey*, 27 Ark. 508; *Smyrna Baptist Church* v. *Burbridge*, 205 Ark. 108, 167 S.W. 2d 501; *Carter Special School District* v. *Hollis Special School District*, 173 Ark. 781, 293 S.W. 722; *Harris* v. *Hare*, 183 Ark. 259, 35 S.W. 2d 340; See 4 Am. Jur. 2d 539, Appeal and Error, § 9. This court has no jurisdiction where the trial court had none. *Trapnall* v. *Jordan*, 7 Ark. 430. Since an appellate court acquires only such jurisdiction as the court wherein the case originated had, it may render only such judgment as the trial court could or should have rendered. *Pride* v. *State*, 52 Ark. 502, 13 S.W. 135; *Price* v. *Madison County Bank*, 90 Ark. 195, 118 S.W. 706; *Markham* v. *Evans*, supra; *Carter Special School District* v. *Hollis Special School District*, supra; *Baughman* v. *Overton*, 183 Ark. 561, 37 S.W. 2d 81; *Wright* v. *Wooldridge*, 94 Ark. 276, 126 S.W. 841; *Woolverton* v. *Freeman*, 77 Ark. 234, 91 SW. 190. See also 4 C.J.S. 159, Appeal and Error, § 41. This court has no jurisdiction to do anything except dismiss this case for want of jurisdiction.

While I academically agree with the majority that appellees have a complete and adequate remedy by appeal as provided by Amendment 35, I do not agree, even academically, that the review is of the nature suggested

in the majority opinion. The very language of the constitutional amendment contradicts the construction of the majority opinion. It says that a commissioner may be removed "after a hearing which may be reviewed by the chancery court * * * with right of appeal therefrom to the supreme court, such review and appeal to be without presumption in favor of any finding by the governor or the trial court." It is not the removal which is to be reviewed, it is the hearing. This cannot mean that a trial de novo such as is specifically provided by statute on appeals to circuit courts is indicated. See, e.g., Ark. Stat. Ann. § 26-1308 (Repl. 1962). On those appeals, there is no review, and the hearing in the inferior tribunal is not even considered. The statute provides that the circuit court shall *hear, try* and *determine* the cause on its merits. No such provision appears in Amendment 35. A review of a hearing, on the other hand, certainly should not involve any more than the type of review given here on appeals from chancery courts. I have been unable to find any instance where the "review" of any matter heard by any tribunal in Arkansas has been taken to encompass a complete new trial where evidence is heard anew and additional evidence accepted, unless a specific statute authorizes or requires this to be done.

In matters pertaining to legal proceedings, the word "review" means a judicial reexamination, as of the proceedings of a lower tribunal of any kind by a higher (Webster's New International Dictionary, Second and Third Editions). This matter was treated by the Supreme Judicial Court of Massachusetts in *Swan* v. *Justices of Superior Court*, 222 Mass. 542, 111 N.E. 386, 389 (1916), wherein it was held that a review of removals of license commissioners of a city indicated simply a reexamination of proceedings already mad. The court said:

"* * * 'A review of the charges' signifies in its broad sense an examination of the specifications of

misconduct which constitute the cause or causes on which the hearing was had, to see if they are stated fairly, in a common sense way, though not necessarily with technical accuracy. A review of 'the evidence submitted thereunder' manifests a purpose that there shall be no new witnesses heard but simply that the evidence on which the mayor based his findings shall be re-examined. A review 'of the findings' imports an examination of the conclusions reached by the mayor both as to facts, law, and the resultant decision.''

The majority has grasped the words ''trial court'' as the basis of the opinion that a complete new trial should be had in the chancery court. The effect of this holding is to relegate the hearing before the chief of the executive branch relating to the removal of a member of that branch to the status of a preliminary hearing such as is conducted before magistrates in felony cases. It would vest the real power of removal in the judicial branch of the government rather than the executive branch. I humbly submit that this was not the intention of the people of Arkansas in the adoption of this amendment.

It is obvious to me that the people intended that the power of removal in the governor be limited to the same causes as applied to other constitutional officers and that it be subject to review in order to prevent arbitrary or capricious action. It is also obvious to me that the people intended to avoid the cumbersome, expensive and generally unsatisfactory impeachment processes by the legislative branch. But it is also clear to me that it was never intended by anyone that the real power of removal be vested in the chancery court of the first district subject only to a trial de novo on appeal, as in other chancery cases.

While I do not think the question was ever properly reached here, I felt compelled to express my present feel-

ings with regard to the proper construction of the constitutional amendment with reference to the subject of review. Viewed in a concrete factual situation, rather than in the abstract, with the question presented through advocacy, I might come to a different conclusion. I dare say that the same might be said as appropriately of my brethren of the majority.

I would reverse and dismiss.