Scott M. MATHESON, Governor of the State of Utah, Plaintiff and Respondent,

v.

Miles "Cap" FERRY, as President of the Utah State Senate, a member of the Utah State Senate, and representative of all the members of the Utah Senate, Defendant and Appellant.

No. 18644.

Supreme Court of Utah.

Oct. 21, 1982.

See also 641 P.2d 674.

Edward W. Clyde, Rodney G. Snow, Salt Lake City, for defendant and appellant.

Michael D. Zimmerman, Salt Lake City, for plaintiff and respondent.

## PER CURIAM:

It is the judgment of the Court that Senate confirmation of judicial appointments as provided for in H.B. 62 is constitutional as to juvenile court appointments, but is unconstitutional as to supreme court, district court and circuit court appointments.

The district court held that H.B. 62 was not severable and that the whole of the act was unconstitutional. It is true that the act contains no severability clause, but we nevertheless find severability since the fundamental legislative intent may be effectuated in the absence of the unconstitutional provisions.

The judgment of the district court is therefore affirmed in part and reversed in part. Concurring and dissenting opinions follow.

## STEWART, Justice (concurring):

In *Matheson v. Ferry,* Utah, 641 P.2d 674 (1982) (hereinafter *Matheson I*), the Court sustained the constitutionality of judicial nominating commissions composed in part of legislative appointees, but held that the restriction on the Governor's appointive power arising from the combination of limiting his choice of appointees to judicial office by judicial nominating commissions and by senatorial veto, was a violation of the principle of separation of powers, Art. V, § 1 of the Utah Constitution.[1] Without addressing specifically the constitutionality of senatorial confirmation by itself and without explaining why senatorial confirmation should be struck down instead of the nominating commissions, the Court struck confirmation to relieve the construction of the Governor's power of appointment.[2] The Court is now asked to address again the question of the constitutionality of Senate confirmation, although in the context of the nominating commissions having no legislative representation and, in the case of supreme court and district court nominating commissions, a majority of the members being gubernatorial appointments.

## I.

In *Matheson I,* the Governor of the State of Utah challenged the constitutionality of judicial nominating commissions for the district court and Supreme Court because one of the seven members of those commissions was appointed by the President of the Senate and one by the Speaker of the House of Representatives. *Matheson I* at 675. The suit also challenged the constitutionality of statutory provisions requiring senatorial approval of all gubernatorial judicial appointments. Four members of the Court sustained the constitutionality of the judicial nominating commissions, while a different group of four members of the Court held senatorial consent unconstitutional. Contrary to the extravagant claim urged in

---

1. Art. V, § 1 provides:

The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in the cases herein expressly directed or permitted.

2. The Court did not rule on whether the appointment power was constitutionally rooted. It was undisputed that the Legislature by statute had conferred that power on the Governor.

*Matheson I* that legislative power over the selection of judges was unrestricted by any provision of the Constitution other than the judicial article, Art. VIII, all five justices of this Court agreed that the Legislature's power to provide for the selection of judges as authorized by Art. VIII, § 3 is subject to the separation of powers provision of Art. V, § 1, and all other pertinent provisions of the Constitution, although one justice thought that Art. V, § 1 had not been violated in this particular case. Three members of the Court concurred in holding that legislative participation in the nominating commissions, combined with Senate confirmation, violated the separation of powers provision.

Judge Bullock, sitting by special assignment, wrote the leading opinion, concurred in by Chief Justice Hall and Justice Howe. That opinion, relying upon a concept of "shared power," held that "a statute providing for two legislative appointees on a seven-member judicial nominating commission is constitutionally accommodated and does not necessarily violate Art. V, § 1." *Matheson I* at 676–77. It further held that the restrictions placed on the gubernatorial power of selection by the judicial nominating commissions *coupled* with the veto power of the Senate constituted a violation of the principle of separation of powers, Art. V, § 1, because it intruded too far into the chief executive's appointive power.

Justice Howe also filed a separate concurring opinion holding that legislative participation in the nominating commissions, *together with* senatorial advice and consent and other legislative controls on the judiciary, constituted unconstitutional control of the judicial branch by the legislative branch in violation of the principle of separation of powers. Although Judge Bullock's opinion and Justice Howe's opinion specifically upheld the constitutionality of legislative participation in the nominating commissions, neither opinion addressed at all the fundamental question of the constitutionality of senatorial advice and consent as such. Nor

did either opinion focus on Art. VII, § 10 of the Constitution as the foundation of such power.[3] However, neither opinion held Senate confirmation as such constitutional.

The author of the instant opinion filed a separate concurring and dissenting opinion concluding that Senate confirmation is part of the appointive power, and, without a specific constitutional provision authorizing confirmation, a statute creating that right is in violation of the doctrine of separation of powers. The only constitutional provision authorizing Senate confirmation of gubernatorial appointments is Art. VII, § 10.[4] However, it was found inapplicable to the appointment of judges who must stand election because Art. VII, § 10, by its terms, does not apply to elective offices. Therefore, the statutory provisions authorizing Senate confirmation of the appointment of Supreme, district, and circuit court judges were found to be in violation of the separation of powers provision in Art. V, § 1. That opinion also concluded that the issue of the constitutionality of the nominating committees was moot and nonjusticiable because it had been specifically withdrawn from issue by the parties.

Justice Oaks filed a concurring and dissenting opinion, stating that judicial nominating commissions were constitutional but that legislative participation on the judicial nominating commissions and Senate confirmation of gubernatorial appointees constituted neither an unconstitutional legislative intrusion into executive powers nor legislative dominance of the judicial branch. He also argued that the advice and consent provision, Art. VII, § 10, did not authorize senatorial consent to judicial appointments because § 10 is only a "backup measure designed to prevent the dilemma of a legally authorized office without a legally prescribed method for filling it." *Matheson I* at 702.

After *Matheson I,* the Legislature could have dispensed with Senate confirmation and maintained legislative participation in the nominating commissions which had

---

**3.** See text of Art. VII, § 10, infra p. 246.

**4.** *Id.*

been held constitutional by a majority of the Court. Instead, the Legislature in the 1982 Budget Session passed H.B. 62, which eliminated the two legislative appointees from the supreme and district court nominating commissions, giving the Governor four appointments—all lay persons—who constitute a majority of the members of the supreme and district court nominating commissions, and retained Senate confirmation of all judges. No change was made in the composition of the circuit and juvenile court nominating commissions which have never had members appointed by the Legislature. Thus, the senatorial advice and consent provisions held in violation of separation of powers in *Matheson I* by four justices, were reenacted without change. See U.C.A., 1953, § 20–1–7.1, § 20–1–7.6(4), and § 78–3a–8 (1982 Interim Supp.).[5]

The Governor then filed the instant case. Notwithstanding the change in the makeup of the nominating commissions, the Gover-

---

**5.** As amended by H.B. 62, Laws of Utah, Ch. 39, § 20–1–7.1 provides:

Except as otherwise provided in this act, justices of the Supreme Court, judges of the district courts, and judges of the circuit court shall be selected, and a vacancy in any such office be filled, by appointment by the governor with the advice and consent of the senate of one of three persons nominated in the manner provided in this act by the appropriate .udicial nominating commission for the office to be filled but persons so appointed shall be subject to election by the voters at the time and in the manner provided in this act.

As amended by H.B. 62, Laws of Utah, Ch. 39, § 20–1–7.3 provides:

(1)(a) Each judicial nominating commission for the Supreme Court and district courts shall have seven members: The chief justice of the Supreme Court, four commissioners chosen by the governor, and two commissioners chosen by the Utah State Bar Association. Commissioners shall be citizens of the United States and residents of Utah. Commissioners appointed to the district court nominating commissions shall be residents of the judicial district to be served by the commission to which they are appointed. Not more than two commissioners appointed by the governor to each judicial nominating commission shall be of the same political party, and none of the commissioners appointed by the governor shall be members of the Utah State Bar Association. The two commissioners chosen by the Utah State Bar Association shall be of different political parties.

(b) If any appointing authority fails to exercise its power to appoint the commissioners authorized by this act, the commissioners who have been appointed, including the chief justice, shall have the authority to act as a commission under all provisions of this act.

(2) The terms of office of the commissioners first appointed shall expire on March 1, 1971, and their successors shall be appointed for terms of four years each. All commissioners shall serve until their successors have been duly appointed and qualified. Commissioners may not succeed themselves in office.

Vacancies in the office of the commissioners shall be filled by the body who chose the commissioner whose office if [sic] vacated. The person who is appointed to fill a vacancy in the office of commissioner other than a vacancy caused by expiration of the term shall be of the same political party and shall serve for the unexpired term of his predecessor in office.

(3) Circuit court nominating commissions shall consist of: The presiding judge or judge of the district court, the chairman or his designee of the county commission of each county in the circuit, the mayor or his designee of each county seat in the circuit, the mayor or his designee of each city with a population of 10,000 or more as of the latest official United States census in the circuit unless the city is the county seat, and two attorneys appointed by the Utah State Bar Association. Commissioners of the circuit court nominating commission shall be residents of the circuit to be served by the commission to which they are appointed except that the presiding district judge shall be a resident of the judicial district. The two commissioners chosen by the Utah State Bar Association shall be of different political parties. All commissioners shall be appointed for terms of four years each commencing on the date of their appointment, which shall be within 30 days of the effective date of this act. All commissioners shall serve until their successors have been duly appointed and qualified.

As amended by H.B. 62, Laws of Utah, Ch. 39, § 20–1–7.6(4) provides:

(4) Subject to the appointee being approved by the senate and being retained in the office by the voters as provided in section 20–1–7.7, the person appointed pursuant to this section shall serve for the unexpired term of his predecessor in office or shall serve for the full term of office provided by law in case the appointment is to fill a vacancy in the office of a justice or judge whose term has expired or is to fill a vacancy created by the establishment of a new judicial office.

nor again alleged that the senatorial advice and consent provisions were unconstitutional. The district court, the Honorable Bryant H. Croft presiding, held that the provisions in H.B. 62 for senatorial approval of appointments to judicial office did not comport with Art. VII, § 10, and, in addition, when coupled with the restriction placed on the power of gubernatorial selection by the existence of the nominating commissions, were in violation of Art. V, § 1, and unconstitutional under the holding of *Matheson I.*

On this appeal, the Appellant, the President of the Senate, Miles "Cap" Ferry, representing a class made up of all the senators of the Utah Senate, challenges the trial court's ruling on three grounds. First, he states that removal of legislative appointees from the nominating commissions for the Supreme Court and district court makes Senate confirmation constitutional under the holding of *Matheson I.* Second, he contends that the power of senatorial confirmation is specifically authorized by Art. VIII, § 3. The argument is that Senate confirmation is only for an "interim" or appointive part of a judge's term and not for the elective part of the term. Third, the Appellant contends that the power of the Governor to make interim appointments of judges without senatorial confirmation was withdrawn by the 1945 constitutional amendment to Art. VII, § 10. Thus, the Appellant in effect concedes that unless the power of confirmation is found in Art. VIII, § 3, confirmation has no constitutional basis.

The Governor contends that the extent of control over the Governor's appointive power under H.B. 62 remains essentially the same as in *Matheson I,* with or without legislative participation on the nominating commissions, and that *Matheson I* is therefore dispositive of the issue of the constitu-

tionality of senatorial consent in this case. He maintains that the majority in *Matheson I* held that nominating commissions, even without legislative representation, coupled with senatorial consent, constitute a violation of Art. V, § 1. Therefore, according to his argument, the Legislature's deletion of legislative representation on supreme court and district court nominating commissions makes no constitutional difference.

I respectfully disagree. Judge Bullock's opinion specifically sustained the constitutionality of legislative participation in the nominating commissions on the "concept of shared power." And it was precisely the issue of the constitutionality of legislative participation on nominating commissions plus senatorial consent that the Governor raised before this Court. *Matheson I* at 675. In this case, we cannot overlook the fact that the Governor now appoints a majority of the members of the supreme and district court nominating commissions. The consequent effect is that the Governor has greater effective power over those nominating commissions, and the effective restriction on his appointive power is less than in *Matheson I.* For that reason, *Matheson I* is not controlling.

That conclusion, however, still leaves unresolved the issue of the constitutionality of senatorial consent. Since the majority in *Matheson I* did not address the root issue of the constitutionality of senatorial consent, apart from its combined effect with nominating commissions on the doctrine of separation of powers, we cannot now avoid addressing that specific issue.[6]

## II.

In my view the senatorial confirmation provisions enacted in H.B. 62 are unconstitutional as to Supreme, district and circuit court judges for the reasons stated in my

**6.** There is only one reference to that provision in Judge Bullock's opinion and that is in footnote 9. That reference relates to the statement in the text that "[t]here is no specific language conferring power upon the executive to make judicial appointments." *Matheson I* at 677. No statement is made in either that opinion or

Justice Howe's opinion as to the constitutional basis of senatorial advice and consent. The discussion of the issue by Justice Oaks in his concurring and dissenting opinion is solely in response to my separate concurring and dissenting opinion.

separate opinion in *Matheson I,* 641 P.2d at 685–94. In the interest of economy and expedition, I provide here only a summary of the legal propositions and conclusions there established and refer the reader to that opinion for a full statement of the reasons and authorities supporting that conclusion.

The Legislature's power to provide for the selection of judges is established in Art. VIII, § 3, which states: "Judges of the Supreme Court and district courts shall be selected for such terms and in such manner as shall be provided by law, provided, however, that selection shall be based solely upon consideration of fitness for office without regard to any partisan political considerations . . . ."

The term "as provided by law" is not an unlimited grant of power to the Legislature to provide for the selection of judges in any manner it may choose. *Matheson I* at 687–88. On that general proposition, the entire Court agreed in *Matheson I.* The legislative power is restricted in two ways. First, the power of the Legislature is restricted by all other applicable provisions of the Constitution, including the principle of separation of powers. *Matheson I* at 688–91. Second, the Legislature is restricted by the inherent nature of the power it exercises as a lawmaking body (except to the extent that other powers are conferred by the Constitution), and the lawmaking power does not include the power to make appointments or to confirm appointments. *Matheson I* at 687–88.

Thus, the term in Art. VIII, § 3, to provide "by law," means to provide the general method by means of which a judicial selection is made. *Matheson I* at 688. It is the preeminent and inherent power of the Legislature under our tripartite system of government to make general laws for the governance of society and the organization of government within the confines of constitutional limitations. *Id.* at 686. The power to make laws, or more specifically to provide by law for the appointment of officials, does not include the power to make appointments to positions in the executive and judicial departments, *Matheson I* at 686–87, although the Legislature may make appointments within the legislative branch since that is a necessary incidence of legislative power. Since confirmation constitutes direct participation in the power of appointment, it is not a part of the legislative power to make laws nor may the Legislature confer that power on itself without constitutional authority. *Matheson I* at 687–88. Indeed, it is not even an act of the Legislature, but of one chamber only. *Matheson I* at 687.

The power to confirm in certain circumstances is granted by the Utah Constitution as one of the several constitutional checks and balances designed to ensure against the abuse of power. *Matheson I* at 691. Although the power of senatorial confirmation is a commonplace check and balance in state constitutions and in the Constitution of the United States,[7] it is nevertheless an exception to constitutional doctrine of separation of governmental powers and requires an express grant of such power, just as the Governor's exercise of legislative power in the form of vetoing legislative enactments must be expressly granted. Absent such authorization, an attempt by the Legislature to assume that power constitutes a violation of the principle of separation of powers.

Appellant Ferry states that H.B. 62 may constitutionally provide for Senate confirmation of an interim judicial appointment pursuant to the Legislature's power under Art. VIII, § 3 because the gubernatorial power of interim appointment once granted by Art. VII, § 10 was withdrawn by the

---

**7.** Article II, § 2 of the United States Constitution provides in part:

[The President] shall nominate, and by and with the Advice and Consent of the Senate, shall appoint Ambassadors, other public Ministers and Consuls, Judges of the Supreme Court, and all other Officers of the United States, whose Appointments are not herein otherwise provided for, and which shall be established by Law: but the Congress may by Law vest the Appointment of such inferior Officers, as they think proper, in the President alone, in the Courts of Law, or in the Heads of Departments.

1945 amendment to that section. It should be noted that although the Appellant does not state so expressly, the implication of his position, as I read it, is that Art. VII, § 10 does apply to judicial appointments except as to interim appointments.

The argument that the appointment of judges is an interim appointment subject to confirmation must be rejected for two reasons. The appointment by the Governor of a judge is not an interim appointment as Appellant uses that term. Second, deletion of the Governor's interim appointment power of elective judges from § 10 and the amendment to Art. VIII did not create a constitutional authorization for senatorial confirmation in any event.

Art. VII, § 10 states:

The Governor shall nominate, and by and with consent of the Senate, appoint all State and district officers whose offices are established by this Constitution, or which may be created by law, and whose appointment or election is not otherwise provided for. If, during the recess of the Senate, a vacancy occur in any State or district office, the Governor shall appoint some qualified person to discharge the duties thereof until the next meeting of the Senate, when he shall nominate some person to fill such office. If the office of Secretary of State, State Auditor, State Treasurer or Attorney General be vacated by death, resignation or otherwise, it shall be the duty of the Governor to fill the same by appointment, and the appointee shall hold his office until his successor shall be elected and qualified, as may be by law provided.

Section 10 provides for senatorial confirmation only in the case of officers appointed by the Governor and "whose appointment *or election* is not otherwise provided for." (Emphasis added.) Under § 10, senatorial confirmation and contested elections are alternative checks on gubernatorial appointments. The critical question is whether the basic nature of the office is elective or appointive. It is not permissible to make an artificial division of the term of an office into an interim part and elective part to justify superimposing the check of confirmation on the further check of a contested election. A judge does not serve two different types of terms. He is appointed, in effect, to qualify as a candidate for election.

Clearly, the fundamental policy embraced in § 10 is that senatorial confirmation is permitted only as to appointive offices. This construction is wholly consistent with the manner in which Art. VII, § 10 treats interim appointments to other elective offices. Section 10 provides that if there is a vacancy in the office of Secretary of State, State Auditor, State Treasurer, or Attorney General, the Governor shall fill the vacancy by appointment, without senatorial consent, and the appointment is valid until the next general election.

One vice of viewing confirmation and election as cumulative conditions of qualification for office is demonstrated by the fact that the Governor could appoint a judge in June of a general election year, and the appointee could then be approved by the voters in the ensuing November election, and yet be denied confirmation by the Senate in January. By the same token, an appointee might lose the election in November but still obtain Senate confirmation in January. Thus, one check could nullify the other check and either could nullify the gubernatorial appointment. That is far more than the traditional kind of check contemplated by Art. VII, § 10.

The reason that a judge usually takes his seat first by appointment, rather than by election, stems from the Art. VIII, § 3 requirement that judges and justices must be selected "solely upon consideration of fitness for office without regard to any partisan political considerations." Before appointment by the Governor, a person must first be approved by a judicial nominating commission which has the purpose and duty to sift applicants solely on the basis of "fitness for office," as indeed the Governor must in selecting one appointee from among the nominees submitted by the judicial nomination commissions.

After the initial selection process has run its course through a judicial nominating

commission and appointment by the Governor, election then stands as a check on both the nominating commission and the Governor. To superimpose a still further check of Senate confirmation on that scheme of selection is not authorized by Art. VII, § 10 or Art. VIII, § 3, as limited by the separation of powers provision, Art. V, § 1. As a practical matter, we might also note that such an array of hurdles as the Legislature has erected would have the effect of deterring the most qualified persons from even applying for a judgeship and eventually risk a decline in quality of appointees.

Furthermore, the law presently requires that judges stand election even for truly interim appointments, i.e., vacancies created by the death or resignation of a judge. Thus, in some cases Appellant's argument really is that the gubernatorial appointment is an interim appointment to an interim term. Yet in even those cases, Supreme, district, and circuit court judges must stand election even though the appointment is truly an interim appointment.

Appellant argues that the 1945 amendment to Art. VII, § 10 withdrew from the Governor the power to make "interim" judicial appointments without senatorial confirmation. Prior to 1945 that provision expressly authorized the Governor to fill vacancies on the Supreme Court and district court which were created by death, resignation, or otherwise, without confirmation. Art. VII, § 10 provided that the appointee was to hold his office until his successor was elected and qualified.[8] The language providing for the interim appointment of judges was deleted at the same time that Art. VIII was amended to dispense with the partisan election of judges and to confer authority on the Legislature to provide for the manner of selection of judges. From that constitutional history, Appellant contends that "the constitutional power was thus vested with the Legislature, which was authorized by the people to provide statutes for both the interim appointment and for the full term."

The 1945 amendments to Art. VIII and Art. VII, § 10 were designed to permit the Legislature to end the intolerable and indefensible practice of judges running for office as partisan politicians. The amendments did not establish what the precise manner of judicial selection should be. The Legislature was given some latitude in providing the means for the selection of judges as long as they were selected on the basis of merit and without regard for partisan considerations. Surely also it was contemplated that the Legislature would provide for a measure of judicial independence and tenure in office, for without those features the whole fundamental concept of a tripartite system of government with coequal and coordinate branches of government, as well as our deep-rooted tradition of limiting the powers of government by a written constitution, would be jeopardized, if not destroyed.

The 1945 amendment to Art. VII, § 10 did not alter the fundamental rules pertaining to when senatorial confirmation of gubernatorial appointments is permissible. By the express terms of § 10, the law as to confirmation applies to all State officers, and that includes judges. The language in § 10 prior to 1945 establishing the Governor's interim appointment power of elective offices without senatorial confirmation was only a particularization of the more general

---

8. Section 10 prior to its amendment in 1945 provided in full text as follows (U.C.A., 1943, vol. 1 p. 124):

The Governor shall nominate, and by and with the consent of the Senate, appoint all State and district officers whose offices are established by this Constitution, or which may be created by law, and whose appointment or election is not otherwise provided for. If, during the recess of the Senate, a vacancy occur in any State or district office, the Governor shall appoint some fit person to discharge the duties thereof until the next meeting of the Senate, when he shall nominate some person to fill such office. If the office of justice of the supreme or district court, Secretary of the State, State Auditor, State Treasurer, Attorney-General or Superintendent of Public Instruction be vacated by death, resignation or otherwise, it shall be the duty of the Governor to fill the same by appointment, and the appointee shall hold his office until his successor shall be elected and qualified, as may be by law provided.

principles embodied in the first sentence of § 10. The specific power of the Governor to make interim appointments of judges under § 10 was removed only to provide consistency with the power conferred on the Legislature by the amendment to Art. VIII, § 3. By that provision the Legislature could provide, if it chose, for the selection of judges without utilizing elections at all. For example, had the Legislature provided for lifetime appointment of judges, as is provided in some states and under the United States Constitution, there could be no interim appointment until the next election, and of course the power of the Senate to confirm would be beyond dispute. In such a case the Governor's interim appointment power of judges, as provided in Art. VII, § 10 prior to its amendment, would have been inconsistent with the statutory scheme enacted under Art. VIII, § 3. Thus, it is the nature of the selection process established by the Legislature which determines whether confirmation is appropriate. In sum, the history of Art. VII, § 10 and the amendment to it do not support Appellant's argument.[9]

At bottom, however, the phrase "as provided by law" which was added to Art. VIII, § 3 in 1945 does not, as discussed above, authorize the Legislature to create its own exceptions to the doctrine of separation of powers, and especially to confer on itself the power to confirm an appointment in violation of the doctrine of separation of powers. Art. VII, § 10 is one of the major constitutional checks and balances and the amendments to § 10 and to Art. VIII were not designed to abrogate that fundamental principle.

From the above it is clear that not even the Appellant, the President of the Senate, agrees with the view that Art. VII, § 10 is totally irrelevant to this case. Far from viewing that provision as "a backup measure designed to prevent the dilemma of [having a] legally authorized office without a legally prescribed method for filling it," as Justice Oaks does (*Matheson I* at 702),

Appellant apparently recognizes § 10 for what it is—one of the important checks and balances that exists between the executive and legislative branches. The argument that judges are subject to confirmation because they are appointed to an interim, nonelective term is built squarely on the assumption that a legislative act requiring confirmation violates the doctrine of separation of powers unless Art. VIII confers that power. Clearly, it does not do so either expressly or impliedly.

### III.

I do not retreat from the basic propositions established in *Matheson I* that the power to appoint judges is a power shared by the executive and legislative departments. But that shared power may not be used to restrict unduly the powers of the executive branch or to impose legislative control on the judicial branch. Nevertheless, the principles applicable to the appointment of juvenile court judges are different from those that apply to Supreme, district, and circuit court judges. Juvenile court judges are not elective officials. Notwithstanding the fact that the Governor's appointive power is restricted to some extent by a nominating commission, that restriction does not result in legislative control, since no legislative appointees sit on the nominating commission. Therefore, Senate approval of juvenile court appointees poses no impermissible control of either the judiciary or the Governor's power of appointment and is not in violation of the doctrine of separation of powers.

### IV.

For the foregoing reasons, I conclude that H.B. 62 is beyond the power conferred on the Legislature by Art. VIII, § 3 and a violation of Art. V, § 1 separation of powers insofar as that act authorizes Senate confirmation of Supreme Court, district court, and circuit court judges since they must stand election subject to contest. For that reason, confirmation is not authorized

---

**9.** Appellant relies on *In Re Interrogatories Propounded by the Senate Concerning House Bill 1078*, 536 P.2d 308, Colorado (1975), and *Nelson v. Miller*, 25 Utah 2d 277, 480 P.2d 467 (1971), for the proposition that constitutional

amendments may contravene what have been long-established and even cherished principles of constitutional law. The principle is unexceptionable, but inapplicable in this case.

by Art. VII, § 10. Because juvenile court judges are not subject to election, the requirement of Senate confirmation as to them is constitutional.

DURHAM, Justice (concurring in the opinion of STEWART, Justice):

I join fully in the opinion of Justice Stewart, although acknowledging that it constitutes a departure from and a partial overruling of the majority holding in *Matheson I.* I believe that the rationale of the majority opinion in *Matheson I* was inconsistent with the result of its holding for juvenile and circuit court judges who are selected before appointment by nominating commissions on which there are no legislative appointees. I further believe that the rationale of *Matheson I* was inadequate in failing to focus directly on the question of the constitutionality of Senate confirmation itself, apart from its combination with the use of judicial nominating commissions. For these reasons, I feel compelled to join Justice Stewart's departure from the majority opinion in *Matheson I.* Whereas I would ordinarily regard myself as bound by principles of *stare decisis* to apply the analysis of a majority in a prior case, I believe it to be more valuable to adopt a position consistent with my own assessment of a constitutional issue of such far-reaching significance as that presented in this case.

HALL, Chief Justice (concurring and dissenting):

I concur in the judgment of the Court that Senate confirmation of supreme court, district court and circuit court judges is unconstitutional and dissent from that portion of the judgment that sanctions Senate confirmation of juvenile court judges.

In the prior case of *Matheson v. Ferry*[1] (hereinafter *Matheson I*), the Court decided that Senate confirmation of gubernatorial judicial appointments in the context of the existing statutory method of judicial selection infringes upon the separation of pow-

ers doctrine in violation of Article V, § 1 of the Constitution of Utah. In his concurring opinion in that case, Justice Stewart also concluded that Senate confirmation of gubernatorial appointees to the offices of justice of the supreme court and judges of the district and circuit courts is unconstitutional under the present method of selecting judges. However, he reached that conclusion on the somewhat different ground that since supreme, district and circuit court judges hold state offices and must therefore stand for election, subject to contest, Senate confirmation is in violation of Article VIII, § 3 and Article V, § 1, as amplified by Article VII, § 10 of the Constitution of Utah, which specifies when the Senate may confirm appointees to state offices.

In the instant case, the trial judge viewed the Court's decision in *Matheson I* as binding upon him and as dispositive of the issues presented. He thereupon declared Senate confirmation of all judicial appointments, including those made to the juvenile court, unconstitutional. In further support of his judgment as it pertains to Senate confirmation of gubernatorial appointments to the supreme, district and circuit courts, he adopted and relied upon the position taken by Justice Stewart in his concurring opinion in *Matheson I.* Thereupon, he concluded that Senate confirmation of gubernatorial judicial appointees that must stand election contravenes Article VII, § 10 of the Constitution of Utah, and that the statutes so providing constitute an unconstitutional grant of power to the Senate.

The issue presented by this appeal differs from the issues resolved in *Matheson I* only in that the Legislature has seen fit to enact a judicial nominating commission statute which no longer provides for legislative participation in the selection of the members of *any* of the judicial nominating commissions.[2]

I conclude, as did the trial court, that deletion of legislative representation on judicial nominating commissions does not significantly alter or affect the unconstitution-

---

1. Utah, 641 P.2d 674 (1982).

2. U.C.A., 1953, § 20–1–7.3, as enacted by Laws of Utah 1982.

al control aspect of Senate confirmation of judicial appointments, which contravenes the separation of powers doctrine set forth in Article V, § 1 of the Constitution of Utah. This Court was of the same opinion at the time of its ruling in *Matheson I.* This is evidenced by the fact that the Court affirmed the trial court in striking down as unconstitutional each of "the 1981 'advice and consent' amendments" which required Senate confirmation of *all* judicial appointments, including circuit and juvenile court appointments.[3] This the Court did notwithstanding the further fact that the Legislature had never had any representation on circuit and juvenile court nominating commissions, its representation being only provided for on supreme and district court nominating commissions.[4] It is thus to be seen that the Court in *Matheson I* made two separate and distinct constitutional determinations, neither of which was conditional or dependent upon the other, nor were they cumulative in nature. Simply stated, *Matheson I* stands for the proposition that the Legislature may *share* in the judicial appointment process, but that it may not *control* the process.

I further conclude, as did the trial court, 1) that the decision of this Court in *Matheson I* specifically and unequivocally supports the judgment that Senate confirmation of all judicial appointments, including those made to the juvenile court, are violative of the separation of powers doctrine as espoused in Article V, § 1 of the Constitution of Utah, and 2) that Article VII, § 10 of the Constitution of Utah precludes Senate confirmation of appointees to the elective state office of supreme court justice and the offices of circuit and district judges.

With the exception of the severability issue, I would affirm the judgment of the trial court, *in toto.*

HOWE, Justice (concurring and dissenting):

I concur in the judgment of this Court that Senate confirmation of supreme court, district court, and circuit court judges is unconstitutional, and dissent from that portion of the judgment that approves Senate confirmation of juvenile court judges. I do this on the basis of my concurring opinion in Matheson I, and on the basis of the majority opinion written by Judge Bullock.

OAKS, Justice (concurring and dissenting):

I concur that Senate confirmation of juvenile court judges is constitutional, and dissent from the judgment that Senate confirmation of supreme court, district court, and circuit court judges is unconstitutional.

The new process of judicial selection specified in H.B. 62, which deletes one type of legislative participation, is less subject to objection as legislative exercise of an executive power or as legislative control over the judicial branch than the law upset in *Matheson v. Ferry,* Utah, 641 P.2d 674 (1982). Consequently, the new process is constitutional, *a fortiori,* for the reasons expressed in my dissent in that case. *Id.* at 694–703.

Instead of listing my agreements and disagreements with the various points made in each of the opinions of the other members of the Court, I limit myself to a brief summary of my own position. I believe that the other members of the Court have taken an excessively narrow view of the legislative power, and have misread the role of Article VII, § 10 of the Constitution. Specifically, (1) the legislature's power to participate in the selection of judges in the manner prescribed in this legislation is validly rooted in Article VIII, § 3 of the Constitution, which provides that judges "shall be selected for such terms and in such manner as shall be provided by law," and (2) the power of judicial selection is neither attributable to nor limited by Article VII, § 10, which is inapplicable by its own terms because the method of selection of judges is "otherwise provided for" by Article VIII, § 3 and valid legislation enacted pursuant thereto.

**3.** Set out verbatim in notes 2, 3 and 4, *Matheson I.*

**4.** As acknowledged by the Court in *Matheson I,* note 1.

As I contemplate the troubled history of this controversy, including the number and depth of the differences among members of this Court and the short life of some of the reasoning and part of the result in *Matheson I,* I can only hope that the persuasive life of some of the reasoning propounded in this latest round of opinions will be equally short-lived, and that this case, like *Matheson I,* will be remembered principally for its result.