Mr. Jim Hinkle, Chairman Arkansas Game Fish Commission 2 Natural Resources Drive Little Rock, Arkansas 72205
Dear Mr. Hinkle:
I am writing in response to your request for an opinion on whether the Governor is required by law to request the advice and consent of the Senate or any other source when appointing members to the Arkansas Game and Fish Commission. Specifically, your request states that it is the Arkansas Game and Fish Commission's understanding that the Governor may legally appoint Game and Fish Commissioners without having to obtain approval through the Arkansas Senate or any other source. You state that your understanding is based upon Arkansas Constitution, Amendment 35, §§ 2 and 3. You note that Amendment 35 is silent on the question of legislative confirmation of Game and Fish Commissioners.
SUMMARY OF RESPONSE
In my opinion, the issue you present is an extremely close question of law. Only a court could definitively answer this question. There is an existing state statute requiring Senate confirmation of certain gubernatorial board and commission appointments, but that statute excepts "appointments of members of boards and commissions governed by specific constitutional provisions that may be in conflict with [the statute.]" The pertinent question is therefore whether a statutory requirement for Senate confirmation conflicts, either expressly or by necessary implication, with Amendment 35 to the Arkansas Constitution. Several rules of construction are relevant in determining the issue: 1) the paramount consideration is the intention of the people in passing the Amendment and this intention will be determined with reference to the language of the Amendment; 2) there has apparently been a traditional practice of Senate confirmation of Game and Fish Commissioners, which fact will be accorded some weight by a court faced with the issue;[1] and 3) the General Assembly possesses all law-making power not denied it either expressly or by necessary implication in Arkansas or United States Constitutions. The Arkansas Supreme Court, however, in some of its decisions, grants substantial independence to the policy-making role of the Game and Fish Commission and has been fairly strict in defining the General Assembly's role in relation thereto. In my opinion, however, one of the most apposite cases also suggests that legislation regarding the service of Game and Fish Commissioners is not prohibited where it does not exceed constitutional limitations and there is no encroachment on a specific power granted to another branch of government.
The weight of authority appears to be that senate confirmation power, as a general matter, does not constitute an encroachment on gubernatorial appointment power. In addition, reading the Amendment as a whole, I cannot find controlling evidence of the people's intention, whether express or implied, to deny the Senate's traditional power of confirmation. I will note, however, that the question is a very close one. In my opinion, therefore, the appointment of Game and Fish Commissioners is in all likelihood subject to Senate confirmation.
THE APPLICABLE STATUTES
Two statutes require discussion on the question of whether Game and Fish Commission appointees must be confirmed by the Senate. I will mention the first statute, although in my opinion it is not as important to the question as the second statute. The first statute is A.C.A. § 25-17-204. It provides in pertinent part as follows:
 (a) The Governor, by and with the advice and consent of the Senate, shall appoint the members of the boards.
 (b) The term of office for each member shall commence January 15 and shall end on January 14 of the fifth or seventh year, as the number of years the full term may be, following the year in which the term commenced. The terms shall be arranged so that the term of one (1) member of each board shall expire each year.
 (c)(1) Within twenty (20) days after the convening of the General Assembly in regular session, the Governor shall submit to the Senate for confirmation the names of those board members and appointees who are by law required to be confirmed by the Senate.
 (2) However, the names of appointees to fill vacancies which occur after the first twenty (20) days of the session of the General Assembly, but prior to the adjournment thereof shall be submitted within five (5) days from the date of each vacancy.
 (3) In the event of rejection by the Senate of an appointee whose name has been so submitted, the Governor shall submit the name of another appointee to fill the vacancy within ten (10) days after receipt of written notice from the Secretary of the Senate of the rejection.
 (4) In the event the Governor should, within the time herein required, fail to appoint or fail to submit to the Senate for confirmation the name of any appointee, then the office shall be vacant, and the Senate shall proceed to fill the vacancy by an appointee of its own choice.
(Emphasis added).
This statute is the compilation of two different acts from the 1940s.See Acts 1943, No. 1 and 1947, No. 417. Act 1 of 1943 was passed to implement the newly adopted Amendment 33 to the Arkansas Constitution, which governs the terms and powers of board and commission members of certain "charitable, penal or correctional institutions." Subsections (a), (b), (d) and (e) of A.C.A. § 25-17-204 were added by the 1943 act. Subsection (c) was added later, by Act 417 of 1947, § 1. It is clear in my opinion, that subsection (a), giving the Governor the power to appoint board members, "by and with the consent of the Senate" only applies to the "charitable, penal, or correctional" boards mentioned in the 1943 Act. See A.C.A. § 25-17-201 and Acts 1943, No. 1, § 4 (referring to "said" boards when detailing the appointment and confirmation power). Subsection (a) of A.C.A. § 25-17-204 thus does not apply to require Senate confirmation of Game and Fish Commissioners. Subsection (c) of the statute, however, may have applicability to "honorary" boards and commissions other than those mentioned in A.C.A. § 25-17-204. See Att'y. Gen. Ops. 91-339 and 88-150, citing dicta in Walther v. McDonald,243 Ark. 912, 422 S.W.2d 854 (1968).
Subsection (c) of A.C.A. § 25-17-204, added by Act 417 of 1947, states that: "[w]ithin twenty (20) days after the convening of the General Assembly in regular session, the Governor shall submit to the Senate for confirmation the names of those board members and appointees who are bylaw required to be confirmed by the Senate." (Emphasis added). Obviously this subsection begs the question of whether a particular appointment is "by law required" to be confirmed. If a board other than one mentioned in A.C.A. 25-17-201 is at issue, other statutory or constitutional law must be referenced to determine that question. Subsection (c) merely provides a procedure to follow if Senate confirmation is required by law. In my opinion, however, subsection (c)(4) of A.C.A. § 25-17-204, allowing the Senate to appoint a board and commission member if the Governor fails to appoint or submit the name of an appointee, cannot be constitutionally applied to Game and Fish Commission appointees. More will be said about that point later in this opinion. Additionally, the procedure set out in A.C.A. § 25-17-204 differs somewhat from the procedure set out in the second statute relevant to the question.
The second relevant state statute, A.C.A. § 10-2-113, provides as follow:
 (a) All appointments made by the Governor of members of boards and commissions of the State of Arkansas, except appointments of members of boards and commissions governed by specific constitutional provisions that may be in conflict herewith, shall be subject to confirmation by the Senate. However, if any such appointment is made while the General Assembly is not in session, the person so appointed may qualify and hold office until the appointment shall be rejected by the Senate.
 (b)(1) The Governor shall submit to the Senate, within ten (10) days after the General Assembly convenes in regular session, the names of all appointments to boards and commissions of this state made subsequent to adjournment of the Senate at the last regular session of the General Assembly.
 (2) All appointments of members of boards and commissions of this state made while the General Assembly is in session shall be submitted immediately to the Senate.
(Emphasis added).
This statute was passed in 1967, over the veto of newly-elected Governor Rockefeller.[2] The original bill contained an emergency clause, but it failed of adoption. See Acts 1967, No. 253, § 4.[3]
Clearly, this statute sets forth a general policy in favor of Senate confirmation of gubernatorial appointees. But equally clearly, this statute excepts from such Senate confirmation board and commission appointments governed by specific constitutional provisions that may be in conflict therewith. I have found no explicit evidence of legislative intent as to which, if any, boards or commissions in existence in 1967 this exception language might have reference. The Arkansas Game and Fish Commission was obviously functioning in 1967 under the auspices of Amendment 35. Again, that Amendment is silent as to confirmation of appointees.
Appointments to the Arkansas Highway Commission, created in 1952 by virtue of Amendment 42, were specifically required by that amendment to be confirmed by the Senate. See Amendment 42, § 2. There could thus be no conflict with that amendment.
Amendment 33, adopted in 1942, contains several requirements concerning certain state boards and commissions, but this amendment does not constitutionally vest the power to appoint commission members at all, except in the case of a vacancy. See Amendment 33, § 5. Amendment 33 authorizes the filling of vacancies arising for reasons other than expiration of the regular term by the "Governor, subject to approval by a majority of the remaining members of the board or commission." Id. To the extent A.C.A. § 10-2-113 purports to apply to the filling of vacancies
arising for reasons other than expiration of the regular term on boards governed by Amendment 33, this constitutional provision would pose some conflict with A.C.A. § 10-2-113.[4]
In addition, of course, it is possible that the exception language was added in a forward-looking fashion, to address any future potentially conflicting constitutional provisions. See Sutherland, StatutoryConstruction, § 49.02 (stating that "[l]egislation is often written in terms which are broad enough to cover many situations which could not be anticipated at the time of the enactment").[5]
Whatever boards or commissions the General Assembly may have had in mind when the statute was adopted, the statute seems clearly to require Senate confirmation except in those instances in which such confirmation would conflict with the Arkansas Constitution.[6]
RULES OF CONSTRUCTION
Before turning to the language of the pertinent constitutional provision, three important precepts of constitutional construction should be detailed.
First, it has been stated that in matters relating to constitutional amendments the intent of the people is controlling. Bailey v. Abington,201 Ark. 1072, 149 S.W.2d 573 (1941). See also, Faubus v. Kinney,239 Ark. 443, 389 S.W.2d 887 (1965). It has been stated that the "primary goal" and "fundamental rule" in the interpretation of constitutional provisions and statutes is to give effect to the intent of the people or legislature, as applicable. Rockefeller v. Hogue, 244 Ark. 1029,429 S.W.2d 85 (1968). The same rules of interpretation applicable to statutes apply equally to the interpretation of constitutional provisions.Knowlton v. Ward, 318 Ark. 867, 889 S.W.2d 721 (1994); Gazaway v. GreeneCounty Equalization Bd., 314 Ark. 569, 864 S.W.2d 233 (1993). It has been stated with regard to statutes that all other interpretive guides must yield
if necessary to give effect to the intention of the enactment. Ramirez v.White County Circuit Court, 343 Ark. 372, 38 S.W.3d 298 (2001). The Court has stated that it should constantly keep in mind the object sought to be accomplished by the Amendment's adoption, and the evils, if any, sought to be prevented or remedied, and effect should be given to the purpose indicated by a fair interpretation of the language used, and the intent may be shown by implications as well as by express provisions. Bailey,supra at 1078-79.
Second, long-standing executive and legislative interpretation of constitutional provisions will be afforded some weight by the courts when such provisions are ambiguous. As stated above, there has been a long-standing practice of Senate confirmation of Game and Fish Commissioners, which fact may be accorded some weight by a court faced with the issue. It has been stated that "[l]ong-continued contemporaneous and practical interpretation of a statute by the executive officers charged with its administration and enforcement, the courts, and the public constitutes an invaluable aid in determining the meaning of a doubtful statute. Sutherland, Statutory Construction, § 49.03 6th ed. The Arkansas Supreme Court has stated that: "[l]egislative interpretation of constitutional provisions is never binding on the courts, but, if there is any doubt or ambiguity, it is persuasive and entitled to some consideration." Mears, County Judge v. Hall, 263 Ark. 827, 835, 569 S.W.2d 91(1978), citing Griffin v. Rhoton, 85 Ark. 89, 107 S.W. 380
(1907). It has also been stated, however, that "[l]egislative and/or Executive interpretations are to be given consideration only when the Constitutional provision is ambiguous." Parkin Printing StationaryCo. v. Arkansas Printing and Lithograph Co., 234 Ark. 697, 706,354 S.W.2d 560 (1962).
It is equally clear, however, that reference to legislative or executive interpretations of the constitution will not control where the constitutional language dictates otherwise. See Parkin, supra at 706 (stating that "[i]t is the duty of the Judicial Department to interpret the Constitution, and we cannot abrogate our duty by adopting interpretations made by either of the other Departments in conflict with plain language"). See also, Mitchell v. Hopper, 153 Ark. 515, 526,241 S.W. 10 (1922) (holding that a concurrent resolution of both houses of the Legislature for submission of a constitutional amendment is not within the purview of Arkansas Constitution, art. 6, § 16 requiring submission to the Governor before it takes effect, despite allegations of long held practice in that regard).
Third, it is generally held, as a canon of state constitutional construction, that a state constitution is not a grant of enumerated powers to a state general assembly, but is rather a limitation on the power of a general assembly to act. See, e.g., Erxleben v. Horton PrintingCo., 283 Ark. 272, 675 S.W.2d 638 (1984); Wells v. Purcell,267 Ark. 456, 592 S.W.2d 100 (1979); Jones v. Mears, 256 Ark. 825,510 S.W.2d 857 (1974); and Berry v. Gordon,237 Ark. 547, 376 S.W.2d 279 (1964). That is, the legislature has absolute power to legislate in all fields unless it is expressly or by necessary implication denied that power by the Arkansas or United States Constitution. Id. It is only when legislation expressly, or by necessary implication, violates a provision of one of those documents that the legislation will be struck down as unconstitutional. North Little Rock Transp. Co. v. City of North LittleRock, 207 Ark. 976, 184 S.W.2d 52 (1945). Bush v. Martineau,174 Ark. 214, 295 S.W. 9 (1927).
This brings us to the relevant language of our constitution.
AMENDMENT 35
Amendment 35 to the Arkansas Constitution was proposed by initiative petition of the people and approved at the November 7, 1944 general election. In my opinion Sections 1, 2, 3, 5 and 6 of the Amendment are pertinent to the question. These sections provide as follows:
1. Commission created — Members — Powers.
 The control, management, restoration, conservation and regulation of birds, fish, game and wildlife resources of the State, including hatcheries, sanctuaries, refuges, reservations and all property now owned, or used for said purposes and the acquisition and establishment of same, the administration of the laws now and/or hereafter pertaining thereto, shall be vested in a Commission to be known as the Arkansas State Game and Fish Commission, to consist of eight members. Seven of whom shall be active and one an associate member who shall be the Head of the Department of Zoology at the University of Arkansas, without voting power.
 2. Qualifications and appointment of members — Terms of office of first commission.
 Commissioners shall have knowledge of and interest in wildlife conservation. All shall be appointed by the Governor. The first members of the Commission shall be appointed by the Governor for terms as follows: One for one year, one for two years, one for three years, one for four years, one for five years, one for six years, and one for seven years. Each Congressional District must be represented on the Commission.
 3. Term of office of members.
 Upon the expiration of the foregoing terms of the said Commission, a successor shall be appointed by the Governor for a term of seven years, which term of seven years shall thereafter be for each member of the Commission. No Commissioner can serve more than one term and none can succeed himself.
* * *
5. Removal of members — Hearing — Review and appeal.
 A Commissioner may be removed by the Governor only for the same causes as apply to other Constitutional Officers, after a hearing which may be reviewed by the Chancery Court for the First District with right of appeal therefrom to the Supreme Court, such review and appeal to be without presumption in favor of any finding by the Governor or the trial court.
 6. Vacancies — Filling — Chairman of commission.
 Vacancies on the Commission due to resignation or death shall be filled by appointment of the Governor for the unexpired term within thirty days from date of such vacancy; upon failure of the Governor to fill the vacancy within thirty days, the remaining Commissioners shall make the appointment for the unexpired term. A chairman shall be elected annually from the seven members of the Commission to serve one year.
Thus, Amendment 35 gives the power to appoint commissioners to the Governor and is silent as to any power of the Arkansas Senate to confirm these appointments. There is thus no express prohibition in Amendment 35 against Senate confirmation of these appointments.
As noted above, the General Assembly possesses all power not denied it by the constitution. It is generally held that the General Assembly's power to act may be denied by necessary implication from the language of the constitution as well as by its explicit terms. State v. Green and Rock,206 Ark. 361, 364, 175 S.W.2d 575 (1943) ("[o]ur cases, however, all recognize the rule that it is not necessary that the limitation, restriction or prohibition appear in express language, it having been often declared that such prohibition, limitation or restriction upon the legislative power may be implied as well as expressed.") With regard to the meaning of a "necessary implication" it has been stated that the phrase means "not natural necessity, but so strong a probability of an intention that one contrary to that which is imputed to the party using the language cannot be supposed." Southwest Gas Corporation v. MohaveCounty, 188 Ariz. 506, 937 P.2d 696 (1997), quoting Sutherland, Stat. Con., § 336. It has also been held that to determine whether a necessary implication exists, the implication may be "drawn from public policy; past acts; the entire terms, purposes, and scope of the act to be considered; the inconvenience, inconsistencies, and absurdities involved in the contrary consideration; indeed from all the things found in the act, the conditions surrounding it, the purposes to be accomplished by it, and the policy dictating it." Id. at 698, quoting Gilbert v.Craddock, 67 Kan. 346, 72 P. 869 (1903).
The question then becomes whether the Arkansas Constitution and specifically the people, in adopting Amendment 35, have implicitly denied
the General Assembly authority to invest the Arkansas Senate with power to confirm appointments to the Game and Fish Commission. In answering this question, it may be helpful to set out the general constitutional framework regarding the power of appointment in Arkansas before analyzing more particularly the provisions of Amendment 35.
CONSTITUTIONAL FRAMEWORK OF THE APPOINTMENT POWER
With regard specifically to the power of appointment, it has been stated that "[u]nlike the federal constitution, there is no general appointment power in the state constitution authorizing the chief executive to make appointments to boards and commissions. Our constitution is silent on that point, although specific grants of the appointment power are made to the Governor in several instances. . . ." Clinton v. Clinton, 305 Ark. 585,810 S.W.2d 923 (1991) (citing Amendment 35, § 6 as one instance). It has also been stated that: "[t]he legislature has, we think, power to make appointments to office unless its powers in that respect are restricted by the constitution, either expressly or by implication." Cox v. State,72 Ark. 94, 99, 78 S.W. 756 (1904). "It is also plain, we think, that the governor has no inherent power, by virtue of his position as chief executive of the state, to make these appointments. If he has such power, it must be because the constitutional has conferred it upon him, and thus, inferentially, at least, forbidden the legislature to make them." Id.
In light of this constitutional framework, there is no question, in my opinion, that the General Assembly may invest the Senate with power to confirm board and commission appointments made by the Governor where the original power of appointment is invested in the Governor by statute.Cf., Leek v. Theis, 217 Kan. 784, 539 P.2d 304 (1975) (where general power of appointment was not invested in executive branch by Kansas Constitution, Senate had power to confirm statutorily created board member). It is only in those limited instances where a particular provision of the Arkansas Constitution affirmatively places the power of appointment in the Governor (as here), or in some other official, that there is any question at all about the power of confirmation.
Even with respect to such cases where there may be a question about the power of confirmation, it is usually held that the power of senate confirmation is not tantamount to the power of appointment. Courts have held that confirmation is a negative power only, and does not invest the Senate with the power to select an appointee. See e.g., Kraus v. KentuckyState Senate, 872 S.W.2d 433 (Ky. 1993) ("[a]n important distinction must be made immediately, and that is that there is a difference between the power to appoint and the power to confirm or reject an appointment by another branch of government"); Seemann v. Kinch, 606 A.2d 1308 (R.I. 1992) ("there is a distinction between a confirmation of an appointment and the appointment itself"); Biggs v. State, 28 Wash.App. 257,622 P.2d 1301 (1981) (senate confirmation power "is to be distinguished from the appointment itself, for in confirming the appointment, the Senate does not in any sense choose the appointee"); Leek v. Theis,217 Kan. 784, 539 P.2d 304 (1975) (same); State ex rel. Brothers v. Zellar, 36 O.O2d 107,218 N.E.2d 729 (1966) ("advice and consent of the Senate is not a part of the qualification for the office" and "Senate has only the negative power to reject such appointment"). See also 67 C.J.S. Officers and PublicEmployees § 55.[7]
Cases from other jurisdictions also support the proposition that confirmation power does not encroach on any executive power of appointment. See e.g., Kraus v. Kentucky State Senate, supra (one hundred years of practice and history supporting senate confirmation of gubernatorial appointees lends to conclusion that separation of powers doctrine is not violated thereby, at least as regards statutorily created board); Alexander v. State, 441 So.2d 1329 (Miss. 1983), distinguished byKirksey v. Dye, 564 So.2d 1333 (Miss. 1990), (senate confirmation does not result in invasion of executive power, at least as to offices created by statute and where the power is wholly negative in nature and senate retains no control over appointee once affirmed) and Leek v. Theis,217 Kan. 784, 539 P.2d 304 (1975) (quoting Alexander Hamilton in No. 66 of the Federalist, as stating "there will, of course, be no exertion of choice on the part of the Senate. They may defeat one choice of the Executive and oblige him to make another; but they cannot themselves choose-they can only ratify or reject the choice").[8]
If applied to Game and Fish Commission appointments, it is clear that under its confirmation power the Arkansas Senate has the potential to reject an appointment made by the Governor under the constitutional authority specifically granted him in Amendment 35. The question is whether this power is constitutionally prohibited. The Governor, after such rejection, is afforded an opportunity to make another appointment to the position. In this regard, it is my opinion that the Senate could not and has not been expressly given the affirmative power to appoint Game and Fish Commissioners, as this would conflict with the Governor's appointment power under Amendment 35. Under this reasoning, Section25-17-204 (c)(4) of the Arkansas Code, therefore, which gives the Senate power to itself appoint members of certain boards and commissions under certain circumstances, cannot in my opinion be constitutionally applied to Game and Fish Commission appointees. Cf. Walther v. McDonald,243 Ark. 912, 422 S.W.2d 854 (1968) (Senate did not have power to itself appoint a member to the Public Service Commission under what is now A.C.A. § 25-17-204(c)(4), because that statute did not apply to PSC, which was not an "honorary" board, and separate statute governed method of appointment). According to the weight of authority, however, senate confirmation alone is not tantamount to the power of appointment. The question remains, however, whether such confirmation would conflict, by necessary implication, with Amendment 35.
The pertinent question in this instance is whether the people intended, in adopting Amendment 35, to "inferentially, at least, forbid the legislature" from investing the Senate with the power to confirm Game and Fish Commissioners.[9] See Cox, supra. "The degree of the clarity of the conflict thus becomes all-important in determining whether the constitution has been violated." Clinton, supra at 589.
ANALYSIS.
In determining the intention of the people in adopting a constitutional amendment, the court will look to the language of the enactment. Jacksonv. Madison County, 175 Ark. 826, 300 S.W. 924 (1927) and COOLEY'S CONST. LIM. 8th ed., p. 124-25). The intention is to be gathered from both the letter and the spirit of the instrument. See Bailey v. Abington, supraand State v. New York Life Ins. Co., 119 Ark. 314, 173 S.W. 1099 (1915). The court has stated that the controlling test is what the people intended in adopting the Amendment and that it is the court's duty to construe a constitutional provision in such a way that an express purpose or implied result will be given effect. Rockefeller v. Hogue,244 Ark. 1029, 1037, 429 S.W.2d 85 (1968). Toward this end, the first factor to consider in determining whether Amendment 35, by necessary implication, prohibits the General Assembly from requiring Senate confirmation of appointments is the language of the Amendment itself.
Again, Amendment 35 is silent as to any confirmation of Game and Fish appointments. Sections 2 and 3 of Amendment 35 invest the Governor with the power to appoint Commissioners. Terms of the Commissioners are set and a term limitation imposed. Amendment 35, § 3. Provision is made for the filling of vacancies. Amendment 35, § 6 (authorizing the Governor to fill vacancies and if he or she fails to do so, investing the remaining Commissioners with this power). Provision is made for the removal of Commissioners for "cause." See Amendment 35, Section 5 (stating that "[a] commissioner may be removed by the Governor only for the same causes as apply to other Constitutional Officers . . ."). None of these provisions is expressly inconsistent with a Senatorial power of confirmation. In addition, I cannot find any controlling evidence of an implied intention of the people to deny the Senate its traditional power of confirmation. In this regard, it does not appear that the language evidences "so strong a probability of an intention that one contrary to that which is imputed to the party using the language cannot be supposed." Southwest GasCorporation v. Mohave County, supra, quoting Sutherland, Stat. Con., § 336.
In addition to the language of Amendment 35 itself, we have the benefit of some Arkansas Supreme Court case law expounding on the intention of the people in adopting the Amendment:
 In adopting Amendment 35, the people of Arkansas made provision for an independent commission to regulate hunting and fishing in the State and to advance conservation of all forms of wildlife. This was something new in our constitutional fabric. By their action the people created the commission, set its membership, prescribed the qualifications for appointment, and generally outlined the powers of the commission. Section 2 of Amendment 35 conferred upon the Governor the power to appoint the commissioners.
Rockefeller v. Hogue, 246 Ark. 712, 716, 439 S.W.2d 805 (1969) ("Rockefeller II").
The court has also stated that:
 In considering the question of the powers of the Commission, we must first view Constitutional Amendment 35, which, of course, is an act of the ultimate sovereign, the people of Arkansas, and is subject only to constitutional, not legislative or judicial, limitations.
Arkansas Game Fish Commission v. Stanley, 260 Ark. 176, 180,538 S.W.2d 533 (1976).
It has also been held that Amendment 35 is "complete within itself" and that "[i]t seems to have been the purpose of those who wrote the Amendment to cover the whole subject, and to either provide, or leave to the Commission, methods for reaching these ends." State ex rel. Wrightv. Casey, 225 Ark. 149, 279 S.W.2d 819 (1955) and Wrape Stave Co. v.Arkansas Game and Fish Commission, 215 Ark. 229, 235, 219 S.W.2d 948
(1949). See also, Chaffin v. Arkansas State Game and Fish Commission,296 Ark. 431, 757 S.W.2d 950 (1988) (reviewing its cases and stating that with regard to legislature's power to set resident hunting and fishing licenses granted in Amendment 35, § 8, that "[a]ll of these decisions limit the legislature to the express grant of power in Amendment 35").See also Rockefeller v. Hogue, 244 Ark. 1029, 429 S.W.2d 85 (1968) ("Rockefeller I") (stating that Amendment 35, § 5, regarding removal of Commissioners for cause, is self-executing and that, in applying the test to determine whether it is self-executing, the court "s[aw] nothing that suggests . . . Amendment 35 is addressed to the legislative branch"); andFarris v. Arkansas State Game Fish Commission, 228 Ark. 776,310 S.W.2d 231 (1958) ("[t]he Amendment clearly divests the Legislature of all of its powers to conserve the wild life resources of this state, except those powers expressly reserved therein").
These decisions appear, at first blush, to invert the usual constitutional precept that state constitutions are merely a limitation, and not a grant of power to the state legislature. For our purposes, however, most of these holdings granting substantial discretion and independence to the Game and Fish Commission interpret the clear delineation of power set out in Section 8 of Amendment 35, as between the Game and Fish Commission on the one hand, and the General Assembly on the other, to exercise power in the regulation and conservation of Arkansas wildlife and are not concerned with the procedure for appointment, service or removal of Commissioners. See Arkansas Game Fish Commissionv. Stanley, supra, and Farris v. Arkansas State Game Fish Commission,supra. But see, Rockefeller v. Hogue, 244 Ark. 1029, 429 S.W.2d 85 (1968) ("Rockefeller I") (holding the procedure for removal of Commissioners "self-executing").
The court in Rockefeller I, supra stated, however (again in reference to § 5 of the Amendment regarding removal of Commissioners for cause), that "[w]e do not intend to imply that legislation in this field is barred. The General Assembly is the repository of all the powers of sovereignty not reserved by the people or reposed in one of the branches. [Citation omitted.] There can be no doubt that the legislative branch may implement any constitutional provision by legislation which is not inconsistent therewith or repugnant thereto, so long as the legislation does not invade specific powers delegated to one of the other branches or exceed specific constitutional limitations." Id. at 1041 (Emphasis added). Again, as the cases cited earlier in this opinion suggest, it is generally held that the power of confirmation does not invade or encroach on the power of appointment. Absent such invasion or encroachment, legislation regarding the appointment and service of Game and Fish Commissioners is not barred.
In my opinion a close question is presented as to whether the broad powers granted to the General Assembly to enact legislation not denied by the constitution and the long-standing executive and legislative history of Senate confirmation of Game and Fish Commissioners, on the one hand, outweighs any implicit intention of the people to deny Senate confirmation power on the other hand. In my opinion, however, there is simply not sufficient evidence in Amendment 35 of any implied intention to deny the Senate its traditional power of confirmation. The Arkansas Supreme Court has indicated that legislation in the area of appointment and removal of Game and Fish Commissioners is not completely forestalled by Amendment 35. See Rockefeller I, supra. Although the matter is not free from doubt, in my opinion a court faced with the issue you pose would likely conclude that gubernatorial appointments to the Game and Fish Commission are subject to Senate confirmation. As stated above, however, only a court could definitively answer the question.
Deputy Attorney General Elana C. Wills prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:ECW/cyh
[1] See Doug Thompson, "Senate Confirmation Authority Questioned," Arkansas News Bureau (www.arkansasnews.com (March 20, 2003)), (stating that "[t]he governor traditionally has sent proposed commissioners names to the Senate for confirmation").
[2] See "Appointments Bill Veto is Overridden By House, Senate,""Action is First In Memory Of Legislators," Arkansas Gazette, March 8, 1967, page 1A. As I am not empowered as a fact-finder in the issuance of Attorney General opinions, I will not undertake an extensive analysis of the history of the exercise of the power of confirmation of Game and Fish appointments.
[3] This clause provided in pertinent part that: "It is hereby found and determined by the General Assembly that most of the affairs of this State are conducted by boards and commissions; that the activities of such boards and commissions vitally affect the public peace, health, safety and welfare; that the appointment of capable and qualified members of such boards and commissions is of vital importance for the proper discharge of duties imposed on such boards and commissions; that many appointments are now being made of persons who are not qualified for such positions. . . ."
[4] It should be noted that subsection (d) of A.C.A. § 25-17-204, however, which is applicable to Amendment 33 boards, echoes the provisions of Amendment 33, § 5 as to filling vacancies arising other than from the expiration of the regular term.
[5] Arkansas Constitution, Amendment 66, creating the Arkansas Judicial Discipline and Disability Commission, might be one provision fitting this description.
[6] Read quite literally, the emphasized exception language of A.C.A. § 10-2-113 purports to dispense with the necessity of Senate confirmation whenever a constitutional provision "may" conflict with the statute. That is, the statute may be read to dispense with Senate confirmation anytime there is a question as to whether that action would conflict with a constitutional provision. I do not think that reading of A.C.A. §10-2-113 is consistent with legislative intent, however. The intention seems to have been to require Senate confirmation except in those instances in which such confirmation would conflict with the Arkansas Constitution. This then becomes the inquiry.
[7] Some courts have disagreed and held that the confirmation power is in conflict with the appointment power. See Matheson v. Ferry,657 P.2d 240 (1982) (Stewart, J., concurring in a per curiam opinion) (". . . confirmation constitutes direct participation in the power of appointment . . ."); and State ex rel. Burns v. DiSalle, Governor,172 Ohio St. 363, 176 N.E.2d 428
(1961) (submission of names of gubernatorial appointees to the State Racing Commission for its "advice and consent" is an attempt on the part of the General Assembly to assume an appointing power which is prohibited by a provision of the Ohio Constitution denying General Assembly to exercise any power of appointment).
[8] One Justice disagrees. See, Matheson v. Ferry, 657 P.2d 240 (1982) (Stewart, J., concurring in per curiam opinion) (stating, in denying Senate confirmation of certain judicial appointments, that "[a]lthough the power of senatorial confirmation is a commonplace check and balance in state constitutions and in the Constitution of the United States, it is nevertheless an exception to the constitutional doctrine of separation of governmental powers and requires an express grant of such power. . . . Absent such authorization, an attempt by the Legislature to assume that power constitutes a violation of the principle of separation of powers.")
[9] In my opinion, because the Arkansas Game Fish Commission is governed by a separate constitutional amendment (Amendment 35) and because a general power of appointment is not placed in any particular branch of government by our constitution, it is not necessary to analyze the applicability of the separation of powers doctrine in detail.